G. H. BROWN, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant in error.

A table, on which or over which is a hollow globe, containing balls or numbers, the drawing out of which determines which of several parties shall take a "pot," to which each has contributed, is a gaming table, under 4465th section of the Code, and one who keeps and presides at the same, that playing and betting for money may done thereat, is guilty of keeping a gaming tsble.

It is not error in the Court to charge the jury as to what constitutes a gaming table, and to say to them, after charging them that they were the judges of the law and the fact, that this did not mean that they might do as they please, or might disregard the charge of the Court.

Gaming. Keno. Constitutional Law. Jury. Before Judge JOHNSON. Muscogee Superior Court. May Adjourned Term, 1869.

The indictment, which was in the usual form, charged said Brown "with the offence of keeping a gaming table; for that the said G. H. Brown, by himself, on the seventh day of July, in the year eighteen hundred and sixty-nine, in the county aforesaid, did keep and have a certain Keno table, the same, then and there, being played with balls and did, then and there, preside and deal at said Keno table; and the jurors aforesaid, upon their oaths aforesaid, do say, that said Keno table, so kept and had by the said G. H. Brown, was then and there kept and used for the purpose of playing and betting at the same, contrary," etc.   It was demurred to generally and the demurrer was overruled.

The evidence on trial was introduced by the State only. It was as follows:   Defendant kept Keno at the "Arbor" in said county in July, 1869.   "Keno" is carried on by means of a number of balls, with numbers on them, being placed in an urn-like receptacle or globe swung in the air; from this these balls are drawn.   Combinations of these corresponding numbers are placed upon boards usually kept in the laps of parties who choose one or more of said boards.   Checks, kept for the convenience of change, are paid for a combination of numbers, and, if this combination is drawn' out, the successful party holding it is entitled to and does receive the "pot" containing all the checks put in by the parties, less fifteen per cent, which is kept by the owner of the "Keno."   "Keno," resembles a lottery and in some respects a raffle.   Neither defendant nor any one connected with the game did any betting; no money was bet on the boards; the money put into the "pot" is paid for the combination numbers, just as in a lottery. Defendant drew out the balls from the globe, sat off to himself and had nothing to do with any betting; he did not bet or wager anything.   "Keno" does not resemble Faro or Roulette, but is in the nature of a lottery and the party drawing the combination numbers takes the prize.   This urn or globe is swung in the air on a table, and the numbers are drawn therefrom.   Defendant managed and conducted it; he received the money or checks from the parties holding the combination numbers on the boards and he paid out the checks so re-

Brown *vs.* The State of Georgia.

ceived less fifteen per cent. It was admitted that said table was licensed by the Mayor and Council of Columbus.

The Court charged the Jury that if they believed from the evidence "that the defendant kept what is commonly called a 'Keno' table in this county, about the time charged in the indictment, and managed it and kept it for the purpose of playing and betting, it matters not what their idea about betting is or what their individual opinion may be, he has thereby violated the law and they should find him guilty. If defendant did, about the time mentioned in the indictment, keep a table with a globe thereon, from which balls were drawn by him, with numbers thereon, and a certain number of other person had each a board with numbers on the same and if these persons each paid money into the hands of the defendant and if the person first getting five numbers drawn from the globe corresponding to like numbers on his board, has all the money paid in by those taking chances, less fifteen per cent., and this table and balls was kept by defendant for the purpose as above expressed, it is keeping a gaming table and they should find him guilty; but if such is not shown by the proof they should find him not guilty."

He was requested to charge the jury that they were the judges of the law and the fact in criminal cases. He so charged with this addition: "This does not mean that jurors may do as they please or disregard the charge of the Court; it does not authorize them to say, that the judgment of the Court in refusing to quash the indictment was wrong. If the Court errs in its rulings or charges the parties may except, but if the jury, after they retire, should disregard or set aside the charge, the parties would be without remedy. Being judges of the law and fact means principally that the jury cannot in criminal cases return a special verdict, that their verdict must be general, either guilty or not guilty, and for this purpose jurors are judges of the law and fact."

The defendant was found guilty and fined $300 00 and costs. His counsel say that the Court erred in refusing to quash said indictment, in charging as he did and in qualifying the request to charge as he did.

(This case was continued last term upon a suggestion of a dimunition of the record.)

THOMAS W. GRIMES, RAMSEY & RAMSEY, for plaintiff in error said Keno was not covered by our Penal Code. Penal laws are construed strictly : 1 Bl. Com., 88.; 29 Barb. (N. Y.) 239.; 39th Barb. (N. Y.) 516.; Peters C. C. R., 118 ; 2 Str. 203 ; 2 Cart., 502; 2 Pa., 162; Hemp., 469 ; U. S. *vs.* Irwin, 5 McC., 178 ; 12th Ga. R., 530 ; 1 Brock, 520; 10 Peters, 524 ; 2 Pa., 584 ; 2 Dallas, 384. As to what is gaming, etc.: Prince's Dig. 646; Act of 1860, p. 160; Act 1859, p. 59 ; Irwin's Code, section 4465. As to jurors being judges of law and fact : 22 Ga., 484; 16th, 603; 17th, 512 ; 4 B. and Ald., 95; 3 John. cas., 537. As to the charge of the Court : 25th Ga. R., 531; 18th 194.

C. J. THORNTON, Solicitor General, by M. H. BLAND-FORD, for the State.

McCAY, J.,

1. Our Code, section 4465, provides that any person who shall preside and deal at any faro table, *or use* any E O or A B C table, or roulette table or *other table of like character*, for the purpose of playing and betting at the same, shall be guilty of keeping a gaming table.

In our judgment this is a sweeping statute, and includes within its provisions every device, kept or used or presided over by one person, that others may play and bet thereat. It seems to us that the leading intent was to make it a penal offence, to preside at, or use any kind of a table, whether square or round or oval, whether set upon legs or hung upon strings, whether flat or globular, at which people should play and bet.

It is not necessary according to the language of the law, that the person, who presides over or uses the "machine," shall be himself one of the betters. If he keep or use the contrivance for the purpose of playing and betting, that playing and betting may be done, he comes within the lan-

guage, and therefore within the meaning of the law. We think, therefore, that the Judge below was right in overruling the demurrer to this indictment, and in holding that the table, or device, described by the proof, was under the law a gaming table.

The plain intent of the Statute was to meet the ingenuity of the class of men whose evil deeds it made a crime. Experience had proven that a law, mentioning the device by name or by detailed description, was easily evaded; a new name, or a slight change in the mode of operations, made such a law inoperative; and it was thought that a sweeping clause, covering every device of like character, with those mentioned by name, was a necessity of public policy.

The "like character" referred to, was that character common to all, the instruments or tables described, to wit: A device deciding by chance a result upon which bystanders, might play and bet. Clearly, under the proof all the conditions of the statute are fulfilled by the table described. Each holder of a card with the numbers upon it, bets that the numbers upon his card will first come out of the globe. Each holder of a card takes it, watches it, holds it, and thus plays it, and over all presides the chief of the concern who draws out the balls, announces the numbers and desides the result.

2. What is the meaning of that law of Georgia which enacts that the jury are, in criminal cases, the judges of the law and the fact? Judge Johnson, in the case before us, informed the jury that this did *not* mean that they might do as they pleased or that they might disregard the charge of the Court as to what was the law. He told them further, that this language meant *principally* that they must give a general verdict of guilty or not guilty; that they could not give a special verdict, and *for this purpose* they were the judges of the law and the fact.

We think the Judge was right. There has, of late years gotten abroad what, in our opinion, is a misapprehension of the powers and duties of juries in criminal cases. We have heard more than one Circuit Judge charge the jury thus: "I have given to you in charge what I think is the law, but if

you think you know better what the law is than I do you are at liberty to act upon that opinion, you are not bound by what I have told you." We are of opinion that this is not the law of Georgia. Our Code is in these words upon this subject:

"On every trial of a crime or offence contained in this Code or for any crime or offence the jury shall be judges of the law and the fact, and shall in every case give a general verdict of guilty or not guilty: "Code, section 4552; and section 4556, prescribing the oath to be administered to the jury concludes thus, "and a true verdict give according to *'evidence.'*'

We are well aware that there are to be found expressions, used *arguendo* by some of the Judges of this Court, in writing out the decisions of the Court, which it is difficult to reconcile with the charge of Judge Johnson, as to the meaning of the first of the two sections we have quoted. But we apprehend that there is no case in which the decision of the Court involves any such difficulty. Very clearly and very certainly, under this section of the Code, the jury are made the judges of the law and the fact, and any infringement by the Court, of this right of the jury is illegal.

In the case of *Golding against the State*, the Circuit Judge had told the jury, that in "judging of the law" they ought not to differ from the Court, unless they were clearly satisfied the Court was in error. This Court held that charge was wrong, and we think correctly. The jury must judge of the law, as well as of the fact; and the judge had no right to say to them, that in *doing this* they ought not to differ from the Court. It will be noticed that the Judge in that case, did not say to the jury, any thing at all as to the source from which they were to get the law. He told them that in *judging of the law* they were not to differ from the Court. This was an infringment upon their undoubted right to judge of the law and the facts, and was therefore error. But that law furnishes no definition of what is meant by the jury being judges of the law and the facts, and is therefore not pertinent to the present discussion.

In this case, the case turned upon the right of the Court to say to the jury that the law inferred the guilt of the pris-

oner from certain specified acts, when in fact, the case was a case of circumstantial evidence, and the Court undertook to judge of the facts by saying that the law inferred that the prisoner did the act from the circumstance.

The case of *Keener* against the State does, it is true, discuss, at some length, the importance of the right in the jury to judge of the law and the facts, and the necessity there is for them to do so in finding a general verdict; but there is nothing in that case to indicate that the Court was of opinion that in judging of the law and the facts, they were at liberty to assume the law to be different from the charge of the Court.

Indeed, so far as we have looked into the cases in this State, there is no foundation for the extraordinary notion which has obtained so much currency, that the jury in criminal cases had no certain and binding guide to which they were to look for the law of the cases, but were left under their solemn oaths to grope about and find their way according to their own notions. It seems to us that this is neither law nor reason, that it makes a mere sham of the Court and is both cruel and unjust to the jury.

The section of the Code 4552, in which these words are found, furnishes, as we think, the very meaning of them given by Judge Johnson. After declaring the jury to be judges of the law and the fact in criminal cases, it adds: And "shall in every case find a general verdict of "guilty" or "not guilty." To do this it is absolutely necessary that they shall come to a conclusion dependant upon both the law and the facts. They must say to themselves, the facts are so and so, and the law is so and so, and the prisoner is therefore guilty or not guilty.

But does it follow at all from this, that the jury may make up their judgment of either the law or the facts, from any other than the legal sources of information? Where do they get the facts? Have they any right to *imagine them?* Must they not look to the evidence for them? Suppose a Judge were to charge a jury that they were not bound to find according to the evidence, that if they had a notion about the case not

derived from the evidence, they might reject the evidence and find upon that notion? Would not such a charge be in the very teeth of that oath which binds them to find according to the *evidence?* They must, it is true, judge of the facts; they must determine whether or no, under the evidence, the prisoner is guilty, but they must take the evidence as it comes before them through the proper legal channels, and nothing is evidence that does not come in that way.

So, also, of the law. To find a general verdict of not guilty or guilty, they must come to a conclusion as to what is the law of the case. They must apply their conclusion as to the law and their conclusion as to the facts together, and they must, from their judgment of both the law and the facts, find a verdict. But how are they to get at a *knowledge* of the law? This Court has said, they cannot take even the Criminal Code to their room. They are generally plain men, unskilled in the law. Is it possible that our law-givers intended to leave so grave a thing as the law of crimes to the consciences and good sense and "internal suggestions" of a jury? We think not. The law appoints a channel by which its rules and regulations are to get to the jury. It is made the duty of the Judge to convey it to them. In the case of *Keener vs. the State*, 18 *Georgia*, 230, 231, Judge Lumpkin says: "It is the duty of the Judge to declare to the jury what the law is, with its exceptions and qualifications, and then to state, hypothetically, to the jury that if certain facts which constitute the offence are proven to their satisfaction, they will find the defendant guilty, otherwise they will find him not guilty." It is made the duty of the Judge to tell them of the whole law of the case. He may read it to them or give it to them in his own words, or he may assent to or dissent from legal propositions advanced by the counsel, upon one side or the other. He is the channel through which, under the law, the jury get the law of the case before them.

When a jury is impannelled, they are presumed to know nothing of the case. The pleadings, the evidence and the charge of the Court put it before them, and in forming their judgment upon the law and the facts, they are just as much at

Brown *vs.* The State of Georgia.

liberty to pay no heed to the evidence as they are to pay no heed to the Court. The latter is the channel through which they get the law, the former the channel through which they get the facts, and they have just as little right to take up their own "internal suggestions" of the one as they have of the other.

It is unfair and unjust to a jury to cast upon them any such duty as is claimed for them. What conscientious man would undertake under his oath to say what was the law of a case, if you deny to him access to the law books, and tell him that the Judge is not a sure guide? If you command him to Judge, and shut him up from the means of judging, you do just as the Eastern King with his sooth-sayers, you command him not only to tell the meaning of the dream, but what the dream was. This, a Daniel and a Daniel alone, was equal to, but no man unlearned in the law of these days, however acute, with a full consciousness of the task he had undertaken, would, as we think, be willing, under his oath, to march up to it. And our experience is that our purest and most intelligent jurymen do never in fact attempt it. Lawyers and Judges may tell them such is their right and their duty, but they nevertheless take the Judge as their oracle, and feel, and we think, rightly, that they have satisfied their oaths when they take the law from the Court without question.

That class of jurymen who find verdicts upon their own notions of the law, are generally the same class who act upon their own notions of the facts, and care as little for what the evidence teaches as they do for what the Judge says.

It is very often a nice question to judge of the law and the facts—to apply each to the other, and come to an intelligent conclusion. The whole question of intention in a particular case, in reference to which the law and the fact so mix and blend themselves, furnishes a large field for judgment. It often happens when there is no doubt at all about the law, that it is a very grave question whether the facts, about which there is also no doubt, make a case under the law, the *intent* of the acts being doubtful, and there is hardly

a case which does not call for wisdom, good sense and sound discretion, to judge of the law and the facts, even when the law is plain. Upon the whole, we see no error in the charge of the Court on this question, and we affirm the judgment.