## Commonwealth v. Nance.

(Decided April 17, 1914.)

### Appeal from Hopkins Circuit Court.

1. Gaming—Pool and Pigeon-hole Table—Section 1972 Kentucky Statutes.—Within the meaning of the term as used in Section 1972, Kentucky Statutes, an ordinary pool table is "similar" to a pigeon-hole table, it being the purpose of the Legislature to embrace within the act any table resembling in its general characteristics a pigeon-hole table, and upon which is played a game alike in a general way the game played upon the pigeon-hole table.

2. Statutes—Construction of.—Statutes must be given a reasonable interpretation, and will always be construed so as to effectuate the purpose of their enactment when it can be done without doing violence to the language itself.

JAMES GARNETT, Attorney General; OVERTON S. HOGAN, Assistant Attorney General, and JOHN L. GRAYOT for appellant.

GIBSON & KINCHELOE for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Reversing.

Section 1972 of the Kentucky Statutes is as follows:

"If any person, being the owner or controller of the tables called "pigeon-hole tables," or any table similar thereto, or any billiard table, shall knowingly suffer or permit, for compensation or reward, any minor under the age of twenty-one years, without the written permission of the parent or guardian of said minor, or other person having the care, custody or control of said minor, to play any game thereon, either by betting or not bet-

ting, or shall knowingly suffer or permit any person to bet upon any game played, every such person so offending shall be fined for each offense one hundred dollars, and shall forfeit the right and privilege of again keeping such tables.''

The indictment in this case was under that section, and charges that,

''The said Nance, in the said county of Hopkins, on ............... day of September, 1913, and before the finding of this indictment, the said Willis Nance being then and there the owner and having control of pool-tables-, being tables similar to tables called pigeon-hole tables, did unlawfully, willingly, and knowingly suffer and permit for compensation and reward Hubbard Cansler, a person under twenty-one years of age, to play games of pool on said tables without permission from the father, mother, or guardian or other person having custody or control of said minor authorizing him so to do.''

At the close of the evidence for the Commonwealth the lower court directed the jury to find the defendant not guilty, being of opinion that under the evidence the pool-table in question was not ''similar'' to a pigeon-hole table, and therefore not embraced within the terms of the statute; and the Commonwealth has appealed.

It is admitted that the defendant was at the time named in the indictment the licensed owner and controller of an ordinary pool table. The undisputed evidence is that Cansler was a minor, and played pool on the pool table and paid defendant therefor, and that he had no written permission from any one authorizing him to play.

The evidence showed that the pool table so owned and controlled by defendant had four legs, and was covered by a cloth, and had rubber cushions on each side and at each end, and that there were six pockets in the table, one at each corner and one in the center of each side; that the game of pool played by the prosecuting witness was played with sixteen balls, fifteen of which were numbered from one to fifteen, and the other was known as the cue ball, without any number; that in playing the game a cue or stick was used, and the game was played by striking the cue ball with such cue or stick and attempting by striking another ball with the cue ball to put it in one of the pockets. The evidence also showed that ''pigeon-hole tables'' are tables not so

wide as pool tables, and longer, but with four legs, and with rubber cushions on the sides and ends, and covered with cloth, and instead of having pockets at each corner and on the sides had a number of holes in the table at one end and certain pegs at or near these holes; that the game was played with balls and a cue, and instead of the balls being numbered, as in the other game, the holes or pockets into which the balls rolled through the holes are numbered. It appears in the evidence that in playing pool the player may shoot from any side or end of the table where the cue ball may happen to be in his effort to put the numbered balls into the pockets, while in playing on the pigeon-hole table he is required to shoot altogether from one end of the table.

In each game it is the purpose to put the balls either into the pockets or the holes; each table is constructed along the same general lines; while the dimensions of the tables are different, they are each covered with a cloth, they are each surrounded by rubber cushions to give life to the balls when they strike them. It requires in each game the same skill and practice to put the balls in the pockets on the one table as to put them into the holes on the other table, and in a general way it may be said not only that the tables are constructed along the same general lines, but that the games played upon the tables require, in a general way, the same sort of skill, the same kind of practice, and a knowledge of the same character.

Manifestly it was the purpose of this enactment to discourage minors from frequenting such places, and to protect them from the evil habits which may be so easily contracted in such surroundings. With this purpose of the statute in view, and considering the general similarity between the two games of pool and pigeon-hole, it cannot be said with any degree of reason that it was the purpose of the statute to protect them from the playing of pigeon-hole pool and not to protect them from the playing of ordinary fifteen ball pool. Statutes must be given a reasonable interpretation, and must always be construed so as to effectuate the purpose of their enactment when it can be done without doing violence to the language itself.

Cyc., Vol. 36, page 457, defines "similar" as follows: "Exactly corresponding, resembling in all respects; precisely like; nearly corresponding; resembling in

many respects; somewhat like; having a general likeness; homogeneous; uniform.''

The lower court gave to the word the strict interpretation indicated by the first part of the definition quoted and was of opinion that under the evidence a pool table was not "similar" to a pigeon-hole; but we think, looking to the plain purpose of the statute, that the more liberal definition later indicated in the quotation should be adopted; and that it was clearly in the mind of the Legislature to embrace within the Act any table resembling in its general characteristics a pigeon-hole table upon which was played a game somewhat similar to or alike in a general way to the game played upon a pigeon-hole table.

It seems to us that any other interpretation of the statute would partially defeat its purpose and would authorize minors to frequent places of this character for the purpose of playing a game resembling in all its essential features the game played upon a "pigeon-hole table.''

If the evidence is substantially the same upon another trial, the court will instruct the jury that a pool table is a table "similar" to a pigeon-hole table.

The judgment is reversed with directions to grant a new trial and for further proceedings consistent herewith.