### Edward Clark v. The State.

No. 14630. Delivered January 20, 1932.
Rehearing Denied October 12, 1932.
Reported in 53 S. W. (2d) 52.

The opinion states the case.

*Roger Lewis,* of Dallas, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for operating a pool hall; punishment, a fine of $25.

We find no brief on file for appellant.

The court properly overruled appellant's motion to quash the second count of the information. The table, etc., described therein all appear in accord with the description of what constitutes a pool hall as set out in article 4668, Rev. Civ. Stats., 1925.

Appellant has a bill of exception to the action of the state's attorney in reading to the jury panel article 4668, Rev. Civ. Stats. The bill is qualified by the learned trial judge, with the statement that the district attorney was permitted to read to the jury the definition of a pool hall, as contained in said article, in order that he might examine the veniremen as to their qualifications. We see no injury possible from such course.

There is also a bill of exception to the definition of a pool hall as given in the court's charge, the objection, as far as we can understand same, being that such definition was taken from our civil statutes and not from any part of our Penal Code. Our view of this, briefly expressed, is that the language of the general repealing clause at the end of the act adopting the Revised Criminal Statutes of 1925 (see Vernon's Ann. C. C. P., vol. 3, p. 396, and Vernon's Ann. P. C., vol. 3, p. 369) is broad enough to exempt from repeal the Revised Civil Statutes enacted in the same year by the same Legislature; the Criminal Statutes enacted at the same session of the Legislature, and all other laws enacted at such time. It is evident that in too many matters to be here eunmerated we have to constantly look to our civil statutes to understand and decide matters which are pertinent in criminal cases such, for instance, as those relating to juries, grand juries, terms of court, etc., etc. In our opinion the action of the court below in giving the charge referred to was not in violation of any law, or of appellant's rights. The facts seem fully to justify the conclusion reached.

Finding no error in the record, the judgment will be affirmed.

*Affirmed.*

ON MOTION FOR REHEARING.

HAWKINS, Judge.—From the agreed statement of facts we copy the following:

"The alleged pool table (see exhibit 'a' attached) is known as a Ten-Ball-Table, or Miniature Pool-Table. It is similar to the regulation Pool Table in the following respects: Shape and design in that it is an upright structure, mounted on four legs, upon which a game is played with balls and cues. The surface of the table is covered with felt; pockets are placed in the corners and along the sides of the table. The four sides of the surface of the table have cushions. The table is equipped with a 'rack' for placing the balls in position to start the game. The balls are made of a similar substance to those used on regulation pool tables, and besides the ten (10) playing balls, a cue ball is included in the equipment. The cues are tipped with leather the same as a regulation pool cue, and the table is supplied with chalk of the same nature as used on a regulation pool table. A string of wooden beads, or counters, is affixed on a slide to the side of the table for the purpose of adding the score.

"The game played upon the ten ball table is similar to the game of pool in this, to-wit: The ten balls are first 'racked', the player then 'breaks' the balls with a cue ball and endeavors to knock the balls into the pockets, in the process of doing which similar shots, such as straight and bank shots which are used in the game of pool, are made.

"The ten ball or miniature pool table is dissimilar to the regulation pool table in that it is of miniature design, being 48 inches long, 26 inches wide, and 33 inches high; in that the cues and balls are proportionate in size; that the ten balls bear no numbers; that the miniature table has eight instead of six pockets; and the pool table of regulation size being 4½ feet wide, 9 feet long, having 15 balls numbered from 1 to 15.

"The most commonly played game of pool is played with fifteen balls; such game being known as pyramid, or rotation pool; that other games of pool may be played with two, three, five and more than fifteen balls. That said miniature table was exhibited for hire, revenue and gain in a drug store where goods and merchandise of value were sold, the table being displayed on the open floor of the drug store where persons of all ages, both men and women, were eligible to play and did play this game on the particular table at the place of business.

"To operate the table the balls were obtained by placing a nickel in a 'slot', where they were returned from the inside of the table. When the balls were shot into the pockets they were deposited in a container on the inside of the table and were recovered at the beginning of a new game by again inserting a nickel in said slot."

It was appellant's contention on original submission, and is now, that

the pool table in question is only a miniature, or toy pool table, and that a distinction should be drawn between it and the ordinary pool table to which it is claimed our statutes relate. It is further urged that the definition of pool hall contained in article 4668, R. C. S. (1925) has no application in the present case. The law relating to pool halls and their suppression was passed by the 36th Legislature (1919), chap. 14, p. 18. The definition of a pool hall is contained in section one of said act which is brought forward in the R. C. S. as said article 4668. The second section of said act prescribes the penalty for operating or maintaining a pool hall "as described herein," and is brought forward as article 653, P. C., in the revision of 1925. The language of article 653 is identical with that found in section two of the original act except that instead of using the words "as described herein," found in the original act,—and which was there appropriate—is changed in article 653 to read: "Whoever shall operate or maintain a pool hall, *as that term is defined by the laws of this state,*" etc. Under the circumstances stated we feel justified in going to the Civil Statutes, the only place in the "laws of this state" where we find the definition sought.

Article 653, P. C., reads: "Whoever shall operate or maintain a pool hall, as that term is defined by the laws of this State, shall be fined not less than twenty-five nor more than one hundred dollars or be confined in jail not less than one month nor more than one year. Each day of such violation shall be a separate offense."

Article 4668, R. C. S., in so far as applicable, reads: "No person acting for himself or others shall maintain or operate a pool hall within this State. The term 'Pool Hall,' as used herein, includes any room, hall, building or part thereof, tent or enclosure of any kind similar to those named, or any inclosed open space, in which are exhibited for hire, revenue, fees or gain of any kind, or for advertising purpose of any kind, any pool or billiard table or stand or structure of any kind or character on which may be played pool or billiards, *or any game similar to pool or billiards played with balls, cues or pins or any similar device.* Any such table, stand or structure of any kind used or exhibited in connection with any place where goods, wares or merchandise or other things of value are sold or given away or where or upon which any money or thing of value is paid or exchanged shall be regarded as a place where is exhibited the same for hire, revenue or gain. * * *" (The italics are ours).

Under the admitted facts heretofore stated, we are not able to escape the conclusion that the table in question, though smaller than the standard pool table, furnished the opportunity of playing thereon a "game similar to pool," which was played with balls and cues. Neither do we think that because the table was exhiibted in a drug store, it would take away from it the character of a pool table, or

prevent a conviction for operating a pool hall. The fact that the table was maintained in a drug store brings it directly under that part of article 4668, R. C. S., which states the effect of maintaining the table in connection with a place where goods are sold, etc. The nearest case in point which we have discovered is Commonwealth v. Nance, 158 Ky., 444, 165 S. W., 423, 17 A. L. R., 102, note. The prosecution was under a statute relating to the playing by minors on a pigeon hole table "or any table similar thereto." We quote from the opinion:

"The evidence * * * showed that 'pigeonhole tables' are tables not so wide as pool tables, and longer, but with four legs, and with rubber cushions on the sides and ends, and covered with cloth, and, instead of having pockets at each corner and on the sides, had a number of holes in the table at one end and certain pegs at or near these holes; that the game was played with balls and a cue, and, instead of the balls being numbered, as in the other game, the holes or pockets into which the balls rolled through the holes are numbered. It appeared in the evidence that in playing pool the player may shoot from any side or end of the table where the cue ball may happen to be in his effort to put the numbered balls into the pockets, while in playing on the pigeonhole table he is required to shoot altogether from one end of the table.

"In each game it is the purpose to put the balls either into the pockets or the holes; each table is constructed along the same general lines; while the dimensions of the tables are different, they are each covered with a cloth, they are each surrounded by rubber cushions to give life to the balls when they strike them. It requires in each game the same skill and practice to put the balls in the pockets on the one table as to put them into the holes on the other table, and in a general way it may be said not only that the tables are constructed along the same general lines, but that games played upon the tables require, in a general way, the same sort of skill, the same kind of practice, and a knowledge of the same character.

"Manifestly it was the purpose of this enactment to discourage minors from frequenting such places, and to protect them from the evil habits which may be so easily contracted in such surroundings. With this purpose of the statute in view, and considering the general similarity between the two games of pool and pigeonhole, it cannot be said with any degree of reason that it was the purpose of the statute to protect them from the playing of pigeonhole pool and not to protect them from the playing of ordinary fifteen ball pool. Statutes must be given a reasonable interpretation, and must always be construed so as to effectuate the purpose of their enactment when it can be done without doing violence to the language itself."

Giving effect to what we understand to be the legislative will, makes necessary the overruling of the motion for rehearing, and it is so ordered.

*Overruled.*