STATE, Appellant, vs. COUBAL, Respondent.

*December 3, 1945—January 11, 1946.*

250

For the appellant there were briefs by the *Attorney General, James Ward Rector,* deputy attorney general, and *Ronald F. North,* district attorney of Chippewa county, and oral argument by *Mr. Rector* and *Mr. North.*

For the respondent there was a brief by *Stafford & Stafford,* attorneys, and *Henry J. Connor* of counsel, all of Chippewa Falls, and oral argument by *Harold E. Stafford.*

MARTIN, J. This is a special proceeding instituted on the petition of the state of Wisconsin under ch. 374, Laws of 1945. That act, by sec. 1 thereof, created sec. 14.426 of the statutes,

which relates to gambling-law enforcement. Sec. 2 thereof created sec. 176.90, Stats., which relates to revocation of license and injunction against gambling devices. Sec. 176.90 (1) provides:

"A license or permit issued under the provisions of this chapter or section 66.05 (10) to any person who shall thereafter knowingly suffer or permit any slot machine, roulette wheel, other similar mechanical gambling device, or number jar or other device designed for like form of gambling, to be set up, kept, managed or used upon the licensed premises or in connection therewith upon premises controlled directly or indirectly by such person, shall be revoked by the circuit courts by a special proceeding as hereinafter provided. When a license or permit has been revoked no other license or permit of any character provided for by chapter 176 or section 66.05 (10) shall be issued to the person who held such license or permit, prior to the expiration of one year from the effective date of such revocation. If an appeal shall be taken from such revocation, any period during which the order is stayed shall be added to the one year."

It should be noted that the county court of Chippewa county has circuit court jurisdiction with respect to special proceedings.

Sec. 176.90 (2), Stats., provides:

"Any sheriff, undersheriff, deputy sheriff, constable or other municipal police officer or any person authorized to enforce the gambling laws under the provisions of section 14.426 shall within ten days after acquiring such information report to the district attorney of the county the name and address of any licensee or permittee under chapter 176 or section 66.05 (10) who to his knowledge has knowingly suffered or permitted any device to which reference is made in subsection (1) to be set up, kept, managed or used upon the licensed premises or in connection therewith upon premises controlled directly or indirectly by such licensee or permittee. Such officer or person shall also report to the district attorney his knowledge of the circumstances and the name of the municipality

or officer by whom the license or permit has been issued. Any other person may in writing and signed by that person report any such name, address and other information to the district attorney. Within ten days after any report to him the district attorney shall institute a proceeding as hereinafter provided before the circuit court of his county or shall within such time report to the attorney general the reasons why such a proceeding has not been instituted. If thereafter the attorney general shall so direct, the district attorney shall institute such proceeding within such reasonable time as the attorney general shall direct unless the attorney general elects to institute the proceeding, in which case he is authorized to do so."

Sec. 176.90 (3), Stats., provides as to the procedure. It further provides:

"The allegations of the petition shall be deemed controverted and shall be at issue without further pleading by the defendant. No hearing shall be adjourned except for cause. If upon such hearing the court shall find that the allegations of the petition are true, it shall issue a written order revoking the license or permit and shall likewise enjoin the defendant from thereafter knowingly suffering or permitting any gambling devices referred to in subsection (1) to be set up, kept, managed or used upon premises directly or indirectly controlled by him. The district attorney shall forthwith cause a copy of the order to be filed with the issuing authority of the license or permit and shall cause a copy to be served upon the defendant as above provided or his attorney. The revocation and injunction shall become effective upon such service. In cases where a license is issued by a town, city, or village, a copy of the order shall also be filed with the beverage tax division in the office of the state treasurer."

Violations of injunctional orders shall be punishable by the court as criminal contempts in accordance with the provisions of ch. 256, Stats., and appeals may be taken from orders issued by the circuit court as in the case of special proceedings.

The foregoing suffices for a consideration of the grounds on which the trial court found ch. 374, Laws of 1945, to be un-

constitutional. The first reason assigned by the court is that the due-process clause is violated as to taking of defendant's property right to answer the petition as he chooses. In this connection, referring to that part of sub. (3) of sec. 176.90, Stats., which provides, "The allegations of the petition shall be deemed controverted and shall be at issue without further pleading by the defendant," the court said:

"Defendant contends that this provision does not give him any choice to either demur, or otherwise answer the petition which the law forcibly denies for him, even though it may be against his will to deny its allegations; that by such denial of the right to plead in accordance with the dictates of his own will, he may be seriously mulcted with costs which he might otherwise have avoided by entry of an answer admitting the allegations of the petition."

Apparently the court was of the view that the law denies to the person proceeded against the right to admit the allegations of the petition, also the right to object to the jurisdiction of the court and to challenge the sufficiency of the allegations of the petition. These are not very persuasive reasons for holding the law unconstitutional. The fact that the law provides that the allegations of the petition shall be deemed controverted and shall be at issue without further pleading by the defendant certainly does not deprive the defendant, either before trial or at the trial, of the right to admit the allegations of the petition; nor does it deprive him of the right to object to the jurisdiction of the court or the right to move to quash the petition as defendant did in the instant case which the trial court treated as a demurrer to the petition. The defendant's supposed right to admit the allegations of the petition by answer is based upon the theory that by so doing he may avoid the payment of costs which would otherwise be taxed against him. This is a special proceeding; costs are discretionary with the court. Sec. 271.02, Stats. The court may deny costs, including disbursements. *Doherty v. Rice,* 240 Wis. 389, 3 N. W. (2d) 734.

The Fourteenth amendment to the federal constitution does not confer upon litigants a property right in any particular form of procedure. "No litigant has a vested right in a particular remedy, so he can have none in rules of procedure which relate to the remedy." *Strange v. Harwood,* 172 Wis. 24, 26, 177 N. W. 862. "Due process of law, guaranteed by the Fourteenth amendment, does not require the state to adopt a particular form of procedure, so long as it appears that the accused has had sufficient notice of the accusation and an adequate opportunity to defend himself in the prosecution." *Rogers v. Peck,* 199 U. S. 425, 435, 26 Sup. Ct. 87, 50 L. Ed. 256.

Under the law and the procedure for its enforcement, the issues for trial in this and similar proceedings are necessarily simple and direct. The law gives a defendant the benefit of a general denial of the allegations of the petition. If a defendant does not admit the allegations of the petition, the state, of course, has the burden of proof to establish its allegations. It cannot be said that the accused is deprived of an adequate opportunity to defend himself. While there is no provision for pleading by the defendant, the allegations of the state's petition are deemed controverted. He may admit the allegations and if he stands trial he may make any or all of the several motions to which reference has been made. We must conclude that the court erred in holding that the due-process clause was violated as to taking of defendant's property right to answer the petition as he chooses.

The court's second reason for holding the law unconstitutional is that there is an illegal withholding from constitutional officers of essential prerogatives of their offices. In this connection the court said:

"The act [ch. 374, Laws of 1945] therefore attempts to completely divest the district attorney, a constitutional officer, of any discretion or *quasi*-judicial function inherent in his office. He may be completely by-passed by the attorney general, or instructed as an errand boy what decision the attorney gen-

eral has made for him and within what limited time the district attorney must take the action decided upon, not by himself, but by another for him. I do not think a constitutional officer elected by the people to discharge the well-known functions of his office may legally be divested of the essence of the office by the legislature in this manner."

The office of the district attorney was created by the constitution, sec. 4, art. VI. No provision has been made in the constitution as to what the duties of the district attorney are to be. The constitution likewise provides for the office of the attorney general, sec. 1, art. VI. His duties shall be such as the legislature may prescribe, sec. 3, art. VI. Pursuant to the provisions of sec. 3, art. VI, there have been many instances in which the attorney general has been required by law to institute proceedings in the trial courts.

The first legislature that convened after the adoption of the constitution enacted what is now sec. 14.53 (1), Stats., which provides that the attorney general on request by the governor or either branch of the legislature shall prosecute in behalf of the state before any court in any county any matter in which the state or its people may be interested. The enactment of the statute by the legislature of 1849 was contemporaneous with the adoption of the constitution. The enactment and its subsequent continuance to the present day is a constitutional interpretation which is conclusive. *Schultz v. Milwaukee County,* 245 Wis. 111, 13 N. W. (2d) 580.

Under similar constitutional provisions the supreme court of North Dakota in *State v. District Court,* 19 N. D. 819, 124 N. W. 417, sustained the right of the attorney general to appear before a grand jury under a statute which empowered him in his discretion to appear in any county in the state and to prosecute such cases as he might think necessary. Not only did the trial court hold that the constitutional function of the district attorney is such as to preclude prosecution of proceedings in trial courts by the attorney general, but also held

that the district attorney possesses inherent, *quasi*-judicial power which precludes the legislature from requiring that he proceed in a particular case contrary to what he might think best.

The only authority cited by the trial court for its conclusion is a passage from 18 C. J., District and Prosecuting Attorneys, p. 1316, sec. 44, to the effect that the district attorney as a *quasi*-judicial officer has a certain discretion "as to when, how and against whom to proceed." This text is supported by the case of *Farrar v. Steele* (1879), 31 La. Ann. 640, in which the court held that under the statute there involved the district attorney had a ministerial duty to present an action, but was vested with discretion as to the parties defendant. The text statement of Corpus Juris in no wise supports the proposition to which it is cited since it does not purport to deal with the constitutional functions of the district attorney as distinguished from what his duty might be under a particular statute.

It is true that the district attorney is a *quasi*-judicial officer. This court has so held in the sense that it is his duty to administer justice rather than to obtain convictions. No one would deny that there are many instances in the performance of his duty in which he may be called upon to exercise discretion. All his duties are not ministerial. There is, however, no basis for holding that his duties in representing the state are not subordinate to legislative direction as to the cases in which he shall proceed. In the usual criminal cases it becomes the absolute duty of the district attorney to appear before a magistrate at his request and represent the state except in cases of assault and battery and cases involving the use of language tending to provoke assault, etc., sec. 59.47 (2), Stats. In the event any person is bound over by a magistrate it becomes the duty of the district attorney to file an information against such person or to state in writing the reasons why he should not file the information with the court. The

court may then determine whether or not the reasons are sufficient. If it deems they are insufficient it may order the information filed and it then becomes the duty of the district attorney to file it. Sec. 355.17. Such has been the district attorney's duty in this state since 1875.

These statutes, under the doctrine of practical interpretation (see *Schultz v. Milwaukee County, supra,* and *In re Appointment of Revisor,* 141 Wis. 592, 124 N. W. 670), are entitled to great weight in determining the legislative power to regulate the conduct of the district attorney in the premises. While these statutes deal with direction of the district attorney by the courts, we are not lacking in like precedent for such direction for the attorney general.

Secs. 133.01 and 133.02, Stats., enacted by ch. 219, Laws of 1893, relating to forfeitures and injunctions under the state antitrust law require that district attorneys shall proceed upon the advice of the attorney general and shall institute such proceedings as the attorney general shall deem necessary. The constitutionality of these sections, so far as the particular provisions are concerned, has never been questioned. The only question that has ever been raised was a contention in *State v. P. Lorillard Co.* (1923) 181 Wis. 347, 193 N. W. 613, that the attorney general had not directed the district attorney to proceed. However, the court held that the attorney general had properly advised the bringing of the action and that it was properly brought.

Sec. 146.04, Stats., enacted by ch. 297, Laws of 1913, provides that if the industrial commission believes that the provisions of that section have been violated it shall advise the attorney general giving the grounds of its belief and the attorney general, or, under his direction, the district attorney, shall forthwith institute proceedings for enforcement. It might also be pointed out that where, under the provisions of sec. 14.53, the attorney general is required by the governor to assist the district attorney in the prosecution of the case

the duty is mandatory. *Emery v. State,* 101 Wis. 627, 646, 78 N. W. 145. If the governor can be legislatively empowered to require the attorney general to act in a given case, we know of no reason why the attorney general cannot be legislatively empowered to require a district attorney to act in a given case. We fail to find anything in the constitution which either expressly or by implication negatives such legislative power.

Under constitutional provisions corresponding to those in this state providing for the offices of attorney general and district attorney, the Montana legislature enacted a statute providing that the attorney general should exercise supervisory power over county (district) attorneys. In *State ex rel. Nolan v. District Court,* 22 Mont. 25, 27, 55 Pac. 916, while the constitutional question as to the power of the legislature was not raised, the court clearly indicated that the statute prescribed an enforceable duty upon the attorney general. The court said:

"A duty to exercise supervisory power clearly implies the possession of supervisory power. There is, therefore, in the attorney general a right to oversee for direction, to inspect with an authority all matters pertaining to the duties of the county attorneys of the state, and to direct with superintending oversight the official conduct and acts of such officials; and it is his prescribed duty to exercise and perform these acts, and to do whatever may be necessary and proper to render his power in these respects effective."

We think it would come as a great surprise to the legal profession of the state were the court to hold that the constitutional function of the district attorney is such as to preclude prosecution of proceedings in the trial courts by the attorney general; also to hold that the district attorney possesses inherent constitutional *quasi*-judicial powers which preclude the legislature from requiring that he proceed in a particular case contrary to what he might think best.

The court further held that the act deprives the trial court of its jurisdiction in a certain contingency. The court said:

"Likewise, there is a question as to whether, in another respect, the district attorney has not been given judicial authority which belongs to the court. By paragraph (3) of the act, the proceeding is instituted by filing a petition setting forth 'a clear and concise statement of the grounds that are alleged to exist justifying a revocation of the license.' The charge made in the petition is based on the district attorney's opinion of what constitutes a violation of section 1. Section 1 does not attempt to cover all gambling devices, but a limited number only, and many of these in general terms. There could easily be a difference of opinion between the court and the district attorney as to whether a certain device is within the prohibition of the act. Since it is the function of the court to pass on questions of law, the decision of the court should be controlling on this subject. Such is not the case under the express wording of the act, which says:

" 'If upon such hearing, the court shall find that the allegations of the petition are true, it shall issue a written order revoking the license or permit and shall likewise enjoin the defendant,' etc.

"Since the petition is drawn by the district attorney and sets forth facts constituting a violation in his opinion, it therefore appears that, if the court differs from the district attorney and does not hold that the device named by the district attorney is within the prohibition of the act, the opinion of the district attorney would nevertheless be controlling, rather than the opinion of the court. Proof being made, the court would under the act be obliged to find that the allegations of the petition are true and would then be obliged under the mandatory clause of the statute to impose the penalties for acts which, in his opinion, are not violations of law."

Needless to say, no authority is cited in support of the foregoing. However, the contention made involves a construction of the statute in the light of constitutional objections urged against it. The rule of construction in such a case is clear:

"This court is bound to give to an act a construction that will avoid constitutional objections to its validity if it will bear it. *Peterson v. Widule,* 157 Wis. 641, 147 N. W. 966; *Palms v. Shawano County,* 61 Wis. 211, 21 N. W. 77; *State ex rel. Chandler v. Main,* 16 Wis. *398; *Atkins v. Fraker,* 32 Wis. 510; *Attorney General v. Eau Claire,* 37 Wis. 400; *State v. Eau Claire,* 40 Wis. 533; *Bound v. Wisconsin Central R. Co.* 45 Wis. 543. This rule applies even though the construction which leads in this direction is not the most obvious or natural construction of the act. *Johnson v. Milwaukee,* 88 Wis. 383, 60 N. W. 270." *State ex rel. Wisconsin Dev. Authority v. Dammann* (1938), 228 Wis. 147, 190, 277 N. W. 278, 280 N. W. 698.

The opening sentence of sec. 176.90, Stats., is quite significant and its import seems to have been overlooked by the trial court. It specifies that liquor and beer licenses of persons who knowingly permit certain gambling devices to be set up, kept, managed or used upon the licensed premises or in connection therewith shall be revoked in a special proceeding "as hereinafter provided." This is the only provision in the section specifying the basis of revocation of license. The remaining provisions are procedural in character and must be interpreted as an implementation of this prime provision. They must be interpreted as provisions to effectuate a revocation if, and only if, the statutory basis exists. The petition is required to set forth a "statement of the grounds that are alleged to exist justifying a revocation of the license or permit under the provisions of subsection (1)," sec. 176.90 (3). If a petition were not to set out grounds justifying a revocation under the provisions of sub. (1) it would not conform with the requirement of the statute and would be subject to dismissal for want of sufficiency. The provision that upon the hearing the court shall revoke the license and issue an injunction if the allegations of the petition are found to be true, must necessarily refer to the required petition, that is, the petition

alleging facts which, if they exist, justify a revocation under the provision of sub. (1).

Construing all relevant provisions of the statute in the light of all applicable rules of construction, there is no basis for the view that it compels a trial court to revoke a license if, following a hearing, a petition charging the keeping of a device not included within the statute is found to be true.

The court's third reason for holding the law unconstitutional is that it is too vague and uncertain. The court held that the language, "slot machine, roulette wheel, other similar mechanical gambling device, or number jar or other device designed for like form of gambling," was so vague and indefinite as to violate the provisions of sec. 7, art. I, Const., which specifies in part, "in all criminal prosecutions the accused shall enjoy the right . . . to demand the nature and cause of the accusation against him." Sec. 7, art. I, Const., applies only to criminal prosecutions. The revocation-of-license proceeding here involved is not a criminal prosecution. The provision so specifies on its face.

As stated in *People ex rel. Presmeyer v. Commissioners of Police* (1874), 59 N. Y. 92, 96, the proceeding is "nothing more than an inquiry into and determination of the question, whether the party licensed continues to be a suitable and proper person to sell intoxicating liquors, the statute itself determining that a violator . . . is not such a person." Licenses have been revoked by administrative authorities in this state for many years. No one has ever supposed that the mere revocation of that privilege required a jury trial or all the other procedural requirements applicable to criminal cases. The records of this court are replete with cases in which the actions of municipal and administrative authorities revoking licenses of one kind or other have been sustained.

Neither does the issuance of an injunction transform the charge against one violating sec. 176.90, Stats., into a criminal charge. Comparable injunctions may be issued under the general equity powers of the court. If the trial court's

position is correct a court of equity could not enjoin the commission of acts constituting a crime without a jury trial, a proposition which is contrary to the decisions of this court. *State ex rel. Trampe v. Multerer* (1940), 234 Wis. 50, 289 N. W. 600; *State ex rel. Cowie v. La Crosse Theaters Co.* (1939) 232 Wis. 153, 286 N. W. 707. Sec. 176.90 does not create a criminal offense and remedial provisions employed in the section do not constitute punishment for a crime.

The trial court held that the alleged vagueness and uncertainty is a denial of due process under the Fourteenth amendment to the federal constitution. The types of gambling devices included in sec. 176.90, Stats., as well as all other gambling devices, are covered by sec. 348.09, and one who knowingly suffers or permits such devices to be set up, kept, managed, or used on premises which he owns or controls violates the provisions of that section. We are not concerned with a statute which prohibits the doing of an act otherwise lawful in such vague and indefinite terms as to make it impossible for a person of common understanding to know when he has done the prohibited act.

If sec. 348.09, Stats., were to contain a provision that in addition to the penalties therein prescribed a court might revoke a liquor or beer license of any person violating the terms of the section, the statute would not on that account be unconstitutional any more than it is at the present time unconstitutional because it does not fix a definite penalty. As the section now reads, the court can impose imprisonment in the county jail for any period not exceeding six months and can impose a fine in any amount not exceeding $100. Such variations in sentences that may be imposed are quite common and we know of no instance in which statutes have been held to be unconstitutional because they give a court discretion in determining the consequences that are to follow a conviction.

If under such discretion to revoke a license under sec. 348.09, Stats., a court were to determine that certain types of gambling devices were particularly obnoxious it might, with-

out regard to any constitutional limitation, determine to revoke licenses only in the case of those devices which appealed to it as obnoxious. No defendant prior to violating the section would have any idea as to whether he would be fined or imprisoned or whether he would in addition be subject to revocation of license. If under such circumstances a court can be given the discretionary authority to revoke licenses in such cases as it might think proper without regard to the type of gambling device involved, there is no requirement that the legislature specify with particularity the types of gambling devices the keeping of which will result in the revocation of a license. The question is not one of specifying a prohibited act otherwise lawful. It is, rather, one of prescribing consequences that are to follow from the doing of an act that is already unlawful and for which a punishment is prescribed.

The real question is whether due process requires that a person who violates the law be advised exactly what the consequences of his violation shall be. The statutory latitudes granted to the courts to prescribe within minimum and maximum limits show that it has never been considered as a requisite of due process that one disposed to violate the law know in advance exactly what the consequences will be. The prohibited acts are not so vague and uncertain as to deny one due process of law.

In *Commonwealth v. Nance,* 158 Ky. 444, 447, 165 S. W. 423, the statute there involved applied to "the owner or controller of the tables called 'pigeonhole tables,' or any table similar thereto." The court, overruling the lower court, held that the word "similar" should receive a liberal interpretation and that it was in the mind of the legislature "to embrace within the act any table resembling in its general characteristics a pigeonhole table upon which was played a game somewhat similar to or alike in a general way to the game played upon a pigeonhole table." A directed verdict of acquittal was reversed and the case remanded for a new trial.

In *Clark v. State,* 121 Tex. Crim. 483, 486, 53 S. W. (2d) 52, the statute under consideration referred to "any game similar to pool or billiards played with balls, cues or pins or any similar device." The court sustained the conviction under the statute.

In *Brown v. Georgia,* 40 Ga. 689, the statute prohibited "any E O or A B C table, or roulette table or other table of like' character." The court sustained the conviction under the statute.

In *State v. Gaughan,* 55 W. Va. 692, 695, 48 S. E. 210, the statute referred to "a gaming table commonly called A, B, C or E O table, or faro bank, or keno table or table of like kind under any denomination." Conviction was affirmed.

In *Commonwealth v. Wyàtt* (Va.), 6 Rand. 694, 697, the court sustained a conviction under a statute referring to "every keeper or exhibitor of any of the tables commonly called A. B. C. or E. O. tables, or faro bank, or any other gaming table of the same or like kind, under any denomination whatsoever, or whether the same be played with cards or dice, or in any other manner whatsoever."

The purpose of generally describing the devices in the statutes involved in these various cases is thus stated in *Brown v. Georgia, supra* (p. 693) :

"The plain intent of the statute was to meet the ingenuity of the class of men whose evil deeds it made a crime. Experience had proven that a law, mentioning the device by name or by detailed description, was easily evaded; a new name, or a slight change in the mode of operations, made such a law inoperative; and it was thought that a sweeping clause, covering every device of like character, with those mentioned by name, was a necessity of public policy."

In none of these cases was the objection raised or discussed that the statute was void for want of certainty. In all the cases the statutes employed language which would be subject to any condemnation that can be directed against the language em-

ployed in our statute, and such language was directly involved. In all cases except in *Commonwealth v. Nance, supra,* the court sustained convictions, and in that case the court reversed an acquittal and directed a new trial.

In *General Motors Corp. v. Attorney General* (1940), 294 Mich. 558, 565, 293 N. W. 751, a statute made it an offense for an employer of both male and female employees to pay a female engaged in the manufacture or production of any article of "like value, workmanship and production a less wage, . . . than is being paid to males similarly employed in such manufacture, production, or in any employment formerly performed by males." It was objected that the statute was so vague and uncertain as to deny due process of law in view of the use of the words "similarly employed." The court, holding that the words mean employment substantially alike, held that they were not vague and uncertain and did not deny due process.

Respondent contends that the law denies equal protection and is discriminatory, that is, it is improper to provide for revocation of beer and liquor licenses of those permitting the named gambling devices to be set up, kept, managed, or used upon licensed premises without making a similar provision in the case of other kinds of licenses. That the liquor traffic may be subjected to peculiar regulations not applicable to other businesses generally has been definitely held by this court. In *Weinberg v. Kluchesky,* 236 Wis. 99, 101, 294 N. W. 530, the court said:

"In passing upon these contentions there are applicable the well-established principles that the legislature in the exercise of the police power may entirely prohibit traffic in intoxicating liquors for use as a beverage, or may license such traffic conditionally by imposing such restraints or conditions upon licensees as it considers necessary and reasonable in its judgment and discretion; even though the conditions coupled with the license may be so burdensome that the business cannot be conducted successfully thereunder." See cases cited.

In *Vieau v. Common Council*, 235 Wis. 122, 124, 292 N. W. 297, the court held that the regulation of the sale of intoxicating liquors does not come within the equality provisions of the United States constitution, citing *Giozza v. Tiernan*, 148 U. S. 657, 661, 13 Sup. Ct. 721, 37 L. Ed. 599. The trial court correctly held that the statute does not unlawfully discriminate against beer and liquor licenses.

The respondent makes a vigorous attack on the injunctional provisions of the law. He claims it constitutes a bill of attainder and legislative usurpation of judicial powers. There is no merit in the contention that the provisions of the law constitute a bill of attainder. As to the injunction provisions of the law, respondent argues that the injunction is against the person of the defendant and restrains him from violating the gambling laws in any place; that it is *in personam* and not *in rem;* that there is no limit in time that the injunction is to run. Respondent concedes that an injunction restraining gambling or certain forms of gambling at a particular place may properly be issued. This court has so held. *State ex rel. Cowie v. La Crosse Theaters Co., supra; State ex rel. Trampe v. Multerer, supra.* But he argues that an injunction may not be constitutionally granted unless it is confined to the doing of acts at a particular place. Several objections are urged against such a general injunction, but none is urged which does not apply equally to an injunction against acts at a particular place.

In *Eilenbecker v. Plymouth County*, 134 U. S. 31, 10 Sup. Ct. 424, 33 L. Ed. 801, a statute of the state of Iowa provided that places or buildings in which liquor was unlawfully manufactured or sold were public nuisances and that whoever should erect, establish, continue, or use any building or erection or place for such purpose should be deemed guilty of a nuisance. Provision was made for an action enjoining the nuisance in any place where it existed. The trial court issued an order enjoining and restraining the defendants from selling or keeping for sale any intoxicating liquors in Plymouth

county. Objection was made that the statute deprived defendants of due process. The United States supreme court said, page 40:

"If the objection to the statute is that it authorizes a proceeding in the nature of a suit in equity to suppress the manufacture and sale of intoxicating liquors which are by law prohibited, and to abate the nuisance which the statute declares such acts to be, wherever carried on, we respond that, so far as at present advised, it appears to us that all the powers of a court, whether at common law or in chancery, may be called into operation by a legislative body for the purpose of suppressing this objectionable traffic; and we know of no hindrance in the constitution of the United States to the form of proceedings, or to the court in which this remedy shall be had. Certainly it seems to us to be quite as wise to use the processes of the law and the powers of the court to prevent the evil, as to punish the offense as a crime after it has been committed."

The judgment of the supreme court of Iowa affirming a fine for contempt of the injunction was upheld.

This court in *State ex rel. Attorney General v. Fasekas,* 223 Wis. 356, 269 N. W. 700, affirmed an order punishing a defendant for contempt in violating an order issued under the Wisconsin Recovery Act, temporarily restraining the defendant from a violation of one of the state's codes of fair competition promulgated under the act. A reference to the printed case discloses that there was no limitation to any given place in the state with respect to the restraint imposed upon violation of the code by the defendant.

In *State ex rel. Attorney General v. Kizer,* 164 S. C. 383, 162 S. E. 444, the supreme court enjoined the operation of slot machines at any place in the state.

We find no constitutional objections as to the extent or duration of the injunction. The law provides that if, upon the hearing of the petition, the court shall find that the allegations thereof are true, it shall "issue a written order revoking the license or permit and shall likewise enjoin the defendant

from thereafter knowingly suffering or permitting any gambling devices referred to in subsection (1) to be set up, kept, managed or used upon premises directly or indirectly controlled by him." The injunction is effective throughout the state and remains in force and effect while the law remains in force, unless it be sooner vacated, modified, or dissolved by the court.

The public policy involved in the enactment of the law was a matter for the legislature, not for the courts. It is our duty to sustain the law unless it is clearly invalid. We are of the opinion that none of the contentions made by the defendant as to the unconstitutionality of ch. 374, Laws of 1945, can be sustained.

*By the Court.*—Order reversed. Cause remanded for further proceedings according to law.