State v. Peterson, 195 Wis. 351.

---

STATE, Plaintiff in error, vs. PETERSON, Defendant in error.

*February 10—March 6, 1928.*

*Criminal law: Private counsel assisting district attorney in prosecution: Reversible error: Duty of district attorney to investigate crime: Embezzlement by village treasurer: Moneys paid on obligation of school district.*

1. In a criminal case, where an attorney, paid from private sources, sat at the district attorney's table while the jury was being drawn, and assisted outside the court room in the preparation of the state's case, defendant was entitled to a new trial; for, though the district attorney may incidentally receive advice or help from outside parties, it is against public policy for an attorney employed by a private individual to assist him, except as provided by statute. pp. 353–358.

2. It is the duty of the district attorney to interview all who he has reason to believe may know any fact material to a criminal prosecution, whether the person interviewed be the attorney retained by those interested in the prosecution or other witnesses. It is likewise the duty of all citizens to inform the district attorney of facts known to them with reference to any violation of law, whether they are laymen or members of the bar representing those interested in the prosecution. p. 359.

3. In the prosecution of a village treasurer for the embezzlement of funds collected for payment to the school district treasurer, the defendant was entitled to show that all such funds had in fact passed to the treasurer of the district or had been disbursed for the benefit of the district.  p. 360.

4. The village treasurer cannot be held to have embezzled such funds merely because he was unable to produce a receipt from the school district treasurer or to show payment directly to him, if such funds were actually devoted to the use of the school district by payment to a bank in discharge of the obligations of the school district.  Nor can he be convicted of embezzlement of such funds by proof that after they had reached the school district treasury they were misappropriated.  p. 360.

Error to review an order of the circuit court for Crawford county: S. E. Smalley, Circuit Judge.  *Affirmed.*

The defendant was convicted of embezzlement and moved for a new trial on several grounds, among which was that the evidence was not sufficient to sustain a conviction and that the trial court erred in permitting private counsel to appear in the preparation and prosecution of the case.  The court granted the motion for a new trial on the latter ground, and the state sued out a writ of error to test the correctness of the ruling.

For the plaintiff in error there were briefs by *J. S. Earll,* special district attorney for Crawford county, the *Attorney General,* and *J. E. Messerschmidt,* assistant attorney general, and oral argument by *Mr. Earll* and *Mr. Messerschmidt.*

For the defendant in error there was a brief by *A. B. Peterson* of Soldiers Grove, *Joseph Evans* of Prairie du Chien, and *Kopp & Brunckhorst* of Platteville, and oral argument by *Mr. A. W. Kopp* and *Mr. Evans.*

Vinje, C. J.  The state does not challenge the fact that it is the established rule in this state that the participation in the trial of a criminal case in court by an attorney paid by private parties is error sufficient to vitiate the conviction. But it is claimed by the state that the assistance given in the trial of this case was not such as to come within the

established rule. That at most all that Mr. Grubb, the private attorney, did was to sit at the district attorney's table while the jury was being drawn, and that afterwards he refrained from coming into the court room though he remained in Prairie du Chien, occupied the office of the district attorney, and assisted in questioning prospective witnesses for the state. The trial court in announcing his decision stated at least some of the things that Mr. Grubb did in the preparation and assistance in the trial of the case. If we eliminate from the case that part that Mr. Grubb did in the trial thereof in the court room we are faced with the question as to whether private parties can pay an attorney for preparing for the trial of a criminal case, such preparation consisting in occupying the office of the district attorney, in summoning prospective witnesses to the office and in questioning them and making memoranda of what they can testify to, and in transferring these memoranda to the district attorney for use on the trial, and in consulting with the district attorney as to the prosecution. The fact that the district attorney may incidentally receive advice or help from outside parties, including private attorneys, does not render a criminal prosecution void. The gist of the error lies in the fact that private parties are permitted to pay private attorneys for the prosecution of criminals, which prosecution consists not only in appearing in court, producing witnesses, questioning them as well as those adduced by the defendant, and arguing the case to the jury, but includes also a preparation for trial, finding out what witnesses can testify to, and producing such testimony in court.

It is clear that the statute contemplates such preparation for trial, for sub. (2) of sec. 59.44, Stats., provides that when a judge appoints counsel to assist the district attorney in the trial of a case it may allow $25 per day for each day actually occupied in the trial, but not to exceed $15 per day and for not more than five days actually and necessarily occupied in preparing for trial. Thus it seems quite clear

that if it is against public policy to pay from private sources for work done in the actual trial or in the open court room, it is equally against public policy to permit private parties to pay for necessary work in preparing for trial. It is true that in cases hereinafter cited the work had all been done in the court room. But it seems to us that more harm may be done to the defendant by preparation outside the court room and privately paid for than by assistance given in open court. In this case it is not very easy to determine the full extent and scope of the assistance given by Mr. Grubb to the district attorney in the work which he performed in his office. If the work is performed in open court it is obviously easily ascertainable by both parties as well as subject to the control of the judge during the trial. Here Mr. Grubb was subject to no one in the work which he did in preparation for trial, and no opportunity was given to the trial court or to this court to determine the exact scope and character of the work Mr. Grubb did. Therefore when it appears that some substantial work is done by an attorney paid by private parties in the preparation of a trial and that the result of his labors is given to the district attorney for such use as he may make of it, we think it comes equally within the ban of the rule prohibiting the payment by private parties for work done in assisting the district attorney in the court room. Of course to come within such prohibition, all aid, whether given in the court room or outside, must be aid which is paid for by private parties and not by the state or district attorney.

Sec. 59.47 makes it the duty of the district attorney to prosecute or defend "all actions, . . . civil or criminal, in the courts of his county in which the state or county is interested or a party; and when the place of trial is changed in any such action or proceeding to another county, prosecute or defend the same in such other county." Sec. 59.44 provides:

"When there is no district attorney for the county, or he

is absent from the court, or has acted as counsel or attorney for a party accused in relation to the matter of which the accused stands charged and for which he is to be tried, or is near of kin to the party to be tried on a'criminal charge, or is unable to attend to his duties, the circuit court, by an order entered in the minutes stating the cause therefor, may appoint some suitable person to perform, for the time being, or for the trial of such accused person, the duties of such district attorney, and the person so appointed shall have all the powers of the district attorney while so acting."

Sub. (2) of the same section provides that the court "may, in the same manner, and in its discretion, appoint counsel to assist the district attorney, in the prosecution of persons charged with crime punishable by imprisonment in the state prison, and in cases of prosecutions before a grand jury, and upon indictments found by grand juries and in bastardy cases. Such counsel shall be paid such sums as the court, by order entered in the minutes, certifies to be a reasonable compensation therefor, which sum shall in no case exceed twenty-five dollars per day for each day actually occupied in such prosecution, and not to exceed fifteen dollars per day for not more than five days actually and necessarily occupied in preparing for trial in any one case, the same to be paid in the manner provided by law for the payment of counsel for indigent criminals." And sub. (3) of the same section reads:

"When there is an unusual amount of civil litigation to which the county is a party or in which it is interested, the circuit court may, on the application of the county board, by order filed with the clerk of said county, appoint an attorney or attorneys to assist the district attorney and fix his or their compensation."

Sec. 59.46 provides for assistance for the district attorney in other than special counties, and sec. 346.57 provides that the district attorney shall not office with other attorneys than partners.

It will be seen from these statutory provisions that the

legislative scheme was and is that the district attorney shall prosecute all criminal actions in the courts of his county, and that where he is not able to do so for any reason the court shall appoint some suitable person in his place to prosecute. It will also be observed from the statutory scheme that it provides for every contingency that one can think of wherein the district attorney needs aid and where it may properly be given him and in what manner it may be given. In the prosecution of criminal actions the district attorney prosecutes for public wrongs, not for private wrongs, and such prosecution should be by a public officer and not a private party. This court has from its earliest days given full effect to our statutory scheme and has declared it to be the public policy of the state.

In an early day in England private parties prosecuted criminal wrongs which they suffered. They obtained an indictment from a grand jury, and it became the duty and the privilege of the person injured to provide a prosecutor at his own expense to prosecute the indicted person. Our scheme of government has changed all this. It is now deemed the better public policy to provide for the public prosecution of public wrongs without any interference on the part of private parties, although they may have been injured in a private capacity different from the general public injury that accrues to society when a crime is committed. So under our system we have private prosecution for private wrongs and public prosecution for public wrongs. Our scheme contemplates that an impartial man selected by the electors of the county shall prosecute all criminal actions in the county unbiased by desires of complaining witnesses or that of the defendant.

In *Biemel v. State,* 71 Wis. 444, 450, 37 N. W. 244, this subject is treated at length, and the court there says:

"We think it is quite clear from the reading of our statutes on the subject, as well as upon public policy, that an attorney employed and paid by private parties should not be

State v. Peterson, 195 Wis. 351.

permitted either by the court or by the prosecuting attorney
to assist in the trial of such criminal cases. The laws have
clearly provided that the district attorney, who is the offi-
cer provided by the laws of the state to initiate and carry on
such trials, shall be unprejudiced and unpaid except by the
state, and that he shall have no private interest in such prose-
cution. He is an officer of the state, provided at the expense
of the state for the purpose of seeing that the criminal laws
of the state are honestly and impartially administered, un-
prejudiced by any motives of private gain, and holding a
position analogous to that of the judge who presides at the
trial."

Cases from other states and from England are there cited
to sustain the policy declared. That policy has been reaf-
firmed in *State v. Russell,* 83 Wis. 330, 53 N. W. 441;
*Smith v. State,* 146 Wis. 111, 130 N. W. 894; and in *Income
Tax Cases,* 148 Wis. 456, 134 N. W. 673, 135 N. W. 164.
In *Rock v. Ekern,* 162 Wis. 291, 156 N. W. 197, it was
held that a contract which provided for the payment by
Mr. Ekern to Mr. Rock in assisting in the prosecution of
one Fowler was void upon the ground of public policy. Mr.
Rock had rendered services in the preliminary examination
of Mr. Fowler which this court held to be a part of the
services contracted for, but that he could not recover be-
cause the contract between the two was against public policy.
The court says:

"The contract as proved is against the public policy of
this state and the trial court erred in permitting the plaintiff
to recover thereon. The acquiescence of the accused, the
court, and the district attorney to allow plaintiff to assist in
the prosecution of Fowler under his private employment by
defendant does not purge the contract of employment of its
illegal character and affords no excuse to enforce it."

It is not quite clear how much Mr. Grubb of Janesville
participated in the preparation or trial of the case, as most of
his work was done outside of the court room. The trial
court in his opinion granting a new trial stated:

"At the opening of the trial Mr. Grubb, an attorney

residing at Janesville, appeared in court and sat at the table with Mr. Earll, who was district attorney *pro tempore* appointed by the court to prosecute the case, and remained at the table during the impaneling of the jury. Before any further proceedings were had, counsel for defendant stated to the court in substance that they would object to Mr. Grubb appearing in the case or participating in the trial, as he was in the employ of private persons interested in prosecuting the defendant. No record was made of this, but the court stated that it would not be proper for Mr. Grubb to participate in the trial, and he thereupon withdrew and did not again appear in court during the trial. Upon the argument of the motion for a new trial it was made to appear by affidavits that Mr. Grubb remained in Prairie du Chien, where the trial was held, during the entire time the trial was in progress [which lasted nearly two weeks], made use of Mr. Earll's office, and that he so remained in Prairie du Chien for the purpose of aiding and assisting Mr. Earll in securing evidence to be presented, examining witnesses prior to their testifying in court, etc. Mr. Earll in reply stated that Mr. Grubb was given the right to use his office; that he used it largely for conferences with his own clients, but that he did question some of the witnesses for the state prior to their testifying in court and advised Mr. Earll as to what their testimony would be."

It is further alleged in affidavits upon information and belief that a fund of about $3,000 was raised by private parties for the purpose of investigating and prosecuting the defendant, which allegations are not denied. So it must be taken as a fact that Mr. Grubb rendered some assistance and did to some extent partake in the trial and prosecution of the defendant both inside the court room and outside.

The conclusion reached is that material aid given to the district attorney in the preparation for trial or in the trial of a criminal case, by a private attorney who is paid for such aid by private parties, invalidates the conviction.

This conclusion does not mean that a district attorney may not consult with parties interested in the prosecution of criminal cases, nor with attorneys who are under pay investigat-

ing the facts involved in the criminal prosecution. But it does mean that attorneys cannot be employed by private parties for the purpose of prosecuting criminal cases whether the services are rendered in the court room in the trial of the case or in the office preparing the case for trial.

This conclusion does not prevent the district attorney from fully investigating every alleged offense against the public. It is his duty to interview all who he has reason to believe may know any fact material to any criminal prosecution whether the person interviewed be an attorney retained by those interested in the prosecution or any other witnesses. This conclusion does not absolve any citizen from the duty of informing the district attorney of the facts known to him with reference to any violation of the law, whether such citizen is a layman or a member of the bar representing those interested in the prosecution.

In his investigation of any alleged offense the district attorney must of necessity consult those who know the facts,— the parties who may have been wronged and their attorneys, if they have employed them. In all such cases the district attorney acts in a *quasi*-judicial capacity and determines what course should be pursued in view of the facts disclosed by his investigation. It is only when the prosecuting officer shares his *quasi*-judicial functions and permits the attorney employed and paid by private parties to participate in determining what shall be done with reference to the commencement of a criminal prosecution, or with reference to the manner in which the prosecution shall be conducted, that the case comes within the condemnation of the rule which is here applied.

On behalf of the defendant it is urged that the order granting a new trial in this case should be affirmed on the ground that the defendant was prosecuted under an allegation in the information alleging that he had embezzled funds belonging to the village of Soldiers Grove and that he was found guilty of embezzling funds belonging to the school

district. Although the funds collected by the village treasurer were by law ultimately to reach the hands of the school district treasurer, it is considered that they belonged to the village treasurer within the meaning of sec. 343.20, Stats., until the defendant as village treasurer had performed his duty and paid the funds to the school district treasurer. However, in view of the method in which the business of the village and school district was conducted, the defendant was entitled to show in any way that he could that he had in fact discharged his duty as village treasurer and that all of the funds which should have gone to the treasurer of the school district had in fact passed to the treasurer of the district or been disbursed for the benefit of the district.

In view of the circumstances of this case and the method in which the business was transacted, the defendant should be credited with such sums as were actually devoted to the use of the school district, whether paid direct to the school district treasurer, or paid to the bank in discharge of other obligations of the school district. This, as we understand the facts in the case, would require a full accounting between the defendant and the school district. If the moneys belonging to the school district were actually devoted to its lawful uses and purposes, the defendant cannot be held liable as for a conversion merely because under the circumstances of this case he was unable to produce a receipt from the school district treasurer or show payment directly to the treasurer of the school district. A conviction under the information could not be sustained by proof that after the moneys had reached the school district treasury they were misappropriated.

Leave to amend the information, if deemed necessary upon a new trial, is granted.

*By the Court.*—Order affirmed.