# STATE of Wisconsin, Plaintiff-Respondent,

## v.

# UNNAMED DEFENDANT, Defendant-Appellant.

Supreme Court

*No. 87–2152–CR. Argued January 5, 1989.— Decided June 22, 1989.*

(Also reported in 441 N.W.2d 696.)

For the defendant-appellant there was a brief (in court of appeals) by *Dennis P. Coffey* and *Coffey, Coffey & Geraghty,* Milwaukee, and oral argument by *Dennis P. Coffey.*

For the plaintiff-respondent the cause was argued by *David J. Becker,* assistant attorney general, with

whom on the brief (in court of appeals) was *Donald J. Hanaway,* attorney general.

HEFFERNAN, CHIEF JUSTICE. This is a permissive appeal of an order of the circuit court, denying a motion to dismiss a criminal complaint issued after a John Doe proceeding under sec. 968.26, Stats. The court of appeals certified the appeal to this court pursuant to sec. (Rule) 809.61. We accepted the certification. We affirm Judge Danforth's order.

This case presents the question of whether sec. 968.26, Stats.,[1] the John Doe criminal proceeding provision, violates the constitutional doctrine of separation of powers.

This case arose as follows. The complainant alleged that she was sexually assaulted in Waukesha county by the unnamed defendant (hereinafter the defendant) in August of 1985. Both the complainant and the defendant

[1] Sec. 968.26, Stats., provides:

**John Doe proceeding.** If a person complains to a judge that he has reason to believe that a crime has been committed within his jurisdiction, the judge shall examine the complainant under oath and any witnesses produced by him and may, and at the request of the district attorney shall, subpoena and examine other witnesses to ascertain whether a crime has been committed and by whom committed. The extent to which the judge may proceed in such examination is within his discretion. The examination may be adjourned and may be secret. Any witness examined under this section may have counsel present at the examination but such counsel shall not be allowed to examine his client, cross-examine other witnesses or argue before the judge. If it appears probable from the testimony given that a crime has been committed and who committed it, the complaint shall be reduced to writing and signed and verified; and thereupon a warrant shall issue for the arrest of the accused. Subject to s. 971.23, the record of such proceeding and the testimony taken shall not be open to inspection by anyone except the district attorney unless it is used by the prosecution at the preliminary hearing or the trial of the accused and then only to the extent that it is so used.

were well known to members of the local legal community. The Waukesha county sheriff's department investigated the complaint and contacted the county district attorney's office.

The Waukesha county district attorney's office perceived a potential ethical problem in the matter because members of the office knew both the complainant and the defendant. Steven E. Tinker, an assistant district attorney for Dane county, was therefore brought in and appointed acting district attorney for Waukesha county in this matter. Tinker reviewed the investigative file of the sheriff's department. On about September 20, 1985, Tinker decided that he would not commence criminal proceedings against the defendant because he did not believe that he would be able to establish guilt beyond a reasonable doubt.

When Tinker refused to file charges, the complainant petitioned the Waukesha county circuit court pursuant to sec. 968.02(3), Stats.,[2] to initiate criminal proceedings. Because the judges of the Waukesha county circuit court personally knew the complainant and defendant, Judge Walter J. Swietlik of Ozaukee county was appointed to consider the complainant's petition. On February 19, 1986, Judge Swietlik heard evidence on the petition and directed Tinker to reevaluate his charg-

---

[2] Section 968.02(3), Stats., provides:

**Issuance and filing of complaints.**

. . .

**(3)** If a district attorney refuses or is unavailable to issue a complaint, a circuit judge may permit the filing of a complaint, if the judge finds there is probable cause to believe that the person to be charged has committed an offense after conducting a hearing. If the district attorney has refused to issue a complaint, he or she shall be informed of the hearing and may attend. The hearing shall be ex parte without the right of cross-examination.

ing decision. On March 5, 1986, Tinker advised Judge Swietlik that, even after reconsideration, he would not change his decision not to file charges. Judge Swietlik then ordered the Waukesha county district attorney, or his designee, to file charges against the defendant.

Judge Swietlik's order was stayed pending appeal. This court's decision in *State ex rel. Unnamed Petitioners v. Connors,* 136 Wis. 2d 118, 401 N.W.2d 782, issued on March 6, 1987, and declared sec. 968.02(3), Stats., unconstitutional because it violated the separation of powers doctrine by unduly impinging on the powers of the executive branch of the government. On May 6, 1987, the court of appeals issued a writ enjoining Judge Swietlik from proceeding in the matter.

The complainant avoided the effect of the *Connors* mandate by petitioning on March 26, 1987, the Waukesha county circuit court pursuant to 968.26, Stats., for commencement of a John Doe criminal proceeding. Judge Richard T. Becker of Washington county was appointed to consider the petition. Judge Becker held a hearing on the matter on May 6, 1987. Part of the hearing was closed to the public, and to the defendant's attorney. During the closed portion of the hearing, a special prosecutor elicited the complainant's testimony. Three weeks later Judge Becker signed and filed a complaint against the defendant.[3] With the filing of the complaint, the instant action was commenced. Section 968.02(2).

Judge John Danforth of Jefferson county was assigned the matter as judge for Waukesha county. Counsel for the defendant moved to have the action dismissed, arguing that the complaint had been issued pursuant to a statute that unconstitutionally gave execu-

---

[3] The record, however, was kept secret pending appeal.

tive powers to the judiciary. A hearing was held on October 16, 1987 on the motion. By order of November 5, 1987, Judge Danforth denied defendant's motion to dismiss, holding that the John Doe procedure for commencement of a criminal complaint was constitutional. The defendant petitioned and was granted permission to appeal Judge Danforth's order denying the motion to dismiss. The court of appeals then certified the matter to this court and we accepted the certification.

The defendant in this case relies heavily on the opinion in *State v. Connors* for the proposition that discretion to charge or not in a criminal case is exclusively an executive power. In *Connors* we held that the judicial charging procedure provided by sec. 968.02(3), Stats., a procedure somewhat similar to the procedure under scrutiny in this case, was an unconstitutional violation of the doctrine of separation of powers.

The state, however, argues that this case arising out of a John Doe proceeding is directly controlled by *State v. Washington,* 83 Wis. 2d 808, 266 N.W.2d 597 (1978), which holds that the John Doe statute does not violate the doctrine of separation of powers. The state also argues that *Connors* was incorrectly decided and urges us to overrule that precedent.

We are thus confronted with a clash between the rationale of the *Connors* opinion and a practice that has been found to be constitutionally sound in *Washington.* We conclude that the premise of *Connors*—that initiation of criminal prosecution is an exclusively executive power in Wisconsin—is erroneous. We therefore overrule the precedent established in *Connors* and affirm the order of the circuit court in this case.

The John Doe criminal proceeding has a long history in Wisconsin. The proceeding has been used by

358

courts, pursuant to statute, since 1839. *State ex rel. Long v. Keyes,* 75 Wis. 288, 292, 44 N.W. 13 (1889); *Washington,* 83 Wis. 2d at 819. A John Doe proceeding requires a judge to assume two functions: investigation of alleged violations of the law and, upon a finding of probable cause, initiation of prosecution. *Washington* at 820. The proceedings are presumptively open, although the John Doe judge may in the exercise of discretion close the proceeding to the public for compelling reasons. *State ex rel. Newspapers v. Circuit Court,* 124 Wis. 2d 499, 370 N.W.2d 209 (1985). The John Doe judge's discretion guides the extent of the inquiry. Section 968.26, Stats.

The defendant's attack on the constitutionality of sec. 968.26, Stats., the John Doe criminal proceeding provision, asserts that the procedure provided by the statute violates the doctrine of separation of powers. The defendant argues that the *Washington* opinion is limited by its dependence on the theory of judge and prosecutor cooperation. In the *Connors* opinion, defendant argues, this court validated the authority of *Washington* only insofar as it allowed cooperative blending or sharing of powers. *Connors,* 136 Wis. 2d at 141, n. 9. The defendant points out that the opinion in *Washington,* 83 Wis. 2d at 823, specifically rejects the notion of judicial orchestration of an investigation. Defendant contrasts the facts of this case with the justifying rationale in *Washington.* In this case, the John Doe judge orchestrated the prosecution. In this case, the prosecution was not, as in *Washington,* a joint executive and judicial undertaking: the Waukesha district attorney was not even consulted.

We recognize that the *Washington* case was concerned primarily with the investigative role of the judge under the John Doe statute, rather than the charging role. We also recognize, and reaffirm, the statements in *Washington* and *State ex rel. Kurkierewicz v. Cannon,*

42 Wis. 2d 368, 166 N.W.2d 255 (1969), that suggest that the John Doe is normally and preferably carried out in cooperation with the district attorney. As desirable as such cooperation may be, however, the John Doe statute itself requires no participation by the district attorney. We find that the separation of powers analysis employed in the *Washington* opinion is also applicable in this case.

The doctrine of separation of powers is not express but rather is "embodied in the clauses of the Wisconsin Constitution providing that the legislative power shall be vested in a senate and assembly (art. IV, sec. 1), the executive power in a governor and lieutenant governor (art. V, sec. 1) and the judicial power in the courts (art. VII, sec. 2)." *State v. Washington,* 83 Wis. 2d at 816. The separation of powers doctrine is an implicit provision of the Wisconsin Constitution.

Separation of powers prevents one branch of government from exercising the powers granted to other branches. *Davis v. Village of Menasha,* 21 Wis. 497 (1867); *Thoe v. Chicago M. & S.P.R. Co.,* 181 Wis. 456, 195 N.W. 407 (1923). Not all governmental powers, however, are exclusively committed to one branch of government by the Wisconsin Constitution. *Rules of Court Case,* 204 Wis. 501, 514, 236 N.W. 717 (1931). Those powers which are not exclusively committed may be exercised by other branches. *Id.* In areas of shared power, however, one branch of government may exercise power conferred on another only to an extent that does not unduly burden or substantially interfere with the other branch's essential role and powers. *State v. Holmes,* 106 Wis. 2d 31, 44, 315 N.W.2d 703 (1982). The doctrine serves to maintain the balance between the three branches, preserve their independence and integ-

rity, and to prevent the concentration of unchecked power in the hands of one branch. *Washington*, 83 Wis. 2d at 826.

This court has three primary sources for interpretation of provisions of the Wisconsin Constitution. *State v. Beno,* 116 Wis. 2d 122, 136–37, 341 N.W.2d 668 (1984). We look first to the language of the constitution itself. *Id.* Because the separation of powers doctrine is not expressly a part of the Wisconsin Constitution, however, this inquiry is of little help. We also look to the constitutional debates and the practices of 1848, as well as the earliest interpretation of the provision as manifested in the first law adopted by the legislature. *Id.* These latter two items are highly relevant to the determination of whether initiation of criminal prosecution is an exclusive executive function.

We point out that not every constitutional controversy can be resolved by simple reference to the intent of the framers. The court's job is obviously more complicated than that, and judicial resources more adaptable to changed conditions. As Chief Justice Winslow pointed out, the state constitution was not intended to halt the race in its progress:

> Where there is no express command or prohibition, but only general language or policy to be considered, the conditions prevailing at the time of its adoption must have their due weight; but the changed social, economic, and governmental conditions and ideals of the time, as well as the problems which the changes have produced, must also logically enter into the consideration, and become influential factors in the settlement of problems of construction and interpretation.

361

*Borgnis v. Falk Co.,* 147 Wis. 327, 349–350, 133 N.W. 209 (1911).

The framers' intent, however, has special significance when we are dealing with a matter which was demonstrably contemplated by the framers. We may confidently presume that the framers were familiar with, and earnestly concerned about, the question we address in this case: the proper procedure for initiation of criminal actions. In this circumstance, we find especially persuasive the fact that the same procedure we review today was in use in 1848, and was presumably considered constitutionally sound by the framers themselves. *State v. Coubal,* 248 Wis. 247, 256, 21 N.W.2d 381 (1946).

Added weight to the constitutional validity of this procedure is given by the long and continuous use of the procedure since 1848, and the uniform acquiescence in its constitutionality. The instant attack on the propriety of judicial initiation of criminal prosecution comes to this court now for the first time after nearly one hundred and fifty years of usage. Persuasive value is accorded to a long-standing, uniform and continuous interpretation of a constitutional provision. *Washington,* 83 Wis. 2d at 827.

The state[4] presents a historical record that disputes the statement in *Connors,* 136 Wis. 2d at 133, that "we write on a clean slate." By showing evidence that until 1945, initiation of prosecution was an exclusively judicial power, the state's argument casts grave doubt on the *Connors* conclusion that forty years later the charging

---

[4] The state's thesis has also been presented in a recent law review article by Attorney Samuel Becker, *Judicial Scrutiny of Prosecutorial Discretion in the Decision Not to File a Complaint,* 71 Marq. L. Rev. 749 (1988).

power was, as a matter of constitutional law, exclusively within the province of the executive.

The argument is that the authority to initiate a criminal proceeding historically has been a judicial function. From the days of the Wisconsin Territory until 1945, the statutes allowed only magistrates to issue criminal complaints. From 1945 to 1969, either a magistrate or a district attorney could charge. Only in 1969 did section 968.02(3) give district attorneys the primary power to charge criminal offenses. The state contends that the district attorney had no power to issue criminal complaints at all until 1945.

The provision for a John Doe criminal proceeding to commence criminal prosecution has been in the Wisconsin statutes since territorial times. Section 2, chapter 369 of the Territorial Statutes of Wisconsin (1839), provided:

> Upon complaint made to any such magistrate that a criminal offense has been committed, he shall examine on oath the complainant and any witnesses produced by him, and shall reduce the complaint to writing, and shall cause the same to be subscribed by the complainant; and if it shall appear that any such offence has been committed, the court or justice shall issue a warrant reciting the substance of the accusation . . ..

This provision was in force in 1848 when the Wisconsin Constitution was adopted. The first state legislature reenacted the provision in 1849.[5] Although it has been occasionally recodified, the John Doe proceeding has remained, substantially unchanged, in our statutes for over one hundred and fifty years.[6] The salient aspect of

---

[5] Wis. Rev. Stat., ch. 145, sec. 2 (1849).

[6] See Wis. Stat. sec. 4776 (1878); Wis. Stat. sec. 361.02

the John Doe proceeding for the purpose of this case—judicial initiation of criminal prosecution—has never appeared to be considered to be inconsistent with the doctrine of separation of powers.

On the other hand, the statutory provision allowing a district attorney to commence a criminal prosecution was first adopted in 1945.[7] The power to commence a criminal action has been given by statute to both trial judges and district attorneys in Wisconsin since that date. Before 1945, however, there was no statutory authorization for a district attorney to issue a complaint. Thus, it appears[8] that prior to 1945, the filing of a criminal complaint was not only allowable as a judicial prerogative, it was probably exclusively a judicial responsibility.

Section 968.26, like all other statutes, is presumed constitutional.[9] *Mack v. State,* 93 Wis. 2d 287, 297, 286

---

(1925); Wis. Stat. sec. 354.025 (1949); Wis. Stat. sec. 954.025 (1967).

[7] Chapter 558, Laws of 1945, creating sec. 361.02(2), Stats.

[8] In *State ex rel. Pflanz v. County Court,* 36 Wis. 2d 550, 554-555, 153 N.W.2d 559 (1967), the court stated that:

> prior to 1949 . . . the practice was for the magistrate to examine the complainant and his witnesses on oath and to reduce the charge to writing in the complaint if he thought there was probable cause.

*See also,* "Law Enforcement in Wisconsin" Vol. 1, Legislative Council Reports, 1948-1951, which states (at p. 64):

> An additional, discretionary duty was added to the office by the 1945 legislature, which authorized district attorneys to swear complainants and issue warrants returnable before some magistrate of the county. Secs. 360.02(2), 361.02(2). But they are not required to do so.

[9] Justice Scalia, in a portion of his dissenting opinion that is not disputed by the majority in *Morrison v. Olson,* — U.S. —, —, 108 S. Ct. 2597, — (1988), points out that perhaps the presump-

N.W.2d 563 (1980). The party challenging a statute's constitutionality has the burden to so prove. Thus, in order to prevail in this case, the defendant must prove that the statute is unconstitutional. *Soo Line Railroad Co. v. Department of Transportation,* 101 Wis. 2d 64, 76, 303 N.W.2d 626 (1981).

■

Given the strong evidence of the long-standing acquiescence in the constitutionality of this statute, from before the adoption of the Wisconsin Constitution to today, we conclude that the statute does not impermissibly delegate exclusive powers of the executive branch to the judiciary. The statute does not violate the constitutional doctrine of separation of powers.

■

We also conclude that there is no basis for upholding the John Doe proceeding in this case and continuing to assert the precedent stated in *Connors.* A *sub silentio* overruling would spring from the mandate in this case. The separation of powers problem that was decisive in *Connors* cannot be distinguished from the separation of powers problem in this case. Nor can we expect that the *Connors* opinion will be easily challenged directly if it is not overruled here. Because of the cumbersome sequence that would be necessary to get the *Connors* statute directly before this court again, in light of our decision in that case, we find it appropriate to specifically overrule *Connors* in this opinion.

tion of constitutionality attaches equally to the conduct of any party in separation of powers cases. Not only the legislature, but all branches of government are presumed to act constitutionally. There is some doubt whether the presumption is meaningful when dealing with questions of law. See, *Brown v. Multnomah County Dist. Court,* 280 Or. 95, 100, n. 6, 570 P.2d 52, 56, n. 6 (1977) (opinion by Linde, J.).

The reasons for which we came to an incorrect conclusion in *Connors* do not justify the decision reached in that opinion. One, however, is worth mention. In *Connors* we relied upon the position of the state that the district attorney is an executive officer and that initiation of prosecution is an executive power, but that the legislature had not gone too far in its allocation of executive charging authority to the judicial branch of government. The court was not presented in *Connors,* as we have been here, with the argument that initiation of prosecution has traditionally been considered a judicial power: the attorney general's office in *Connors* failed to bring any of the relevant constitutional history to our attention. Regardless of our wisdom in accepting the concessions of the attorney general in that case, it is clear that those concessions should not bind other cases. The precedential value of *Connors* is therefore already suspect. See *Wilson v. State,* 82 Wis. 2d 657, 663–64, 264 N.W.2d 234 (1978), wherein we pointed out that a prior case that rested upon an inappropriate concession by the attorney general was without precedential significance.

We note that in contrast to sec. 968.26 (the John Doe criminal proceeding), sec. 968.02(3) (which was the subject of *Connors*) provides for more judicial discretion in the charging function. Section 968.02(3) is operative in specific circumstances: in absence of the district attorney or after a refusal of district attorney to initiate prosecution. Moreover, sec. 968.02(3) allows judges greater discretion: the John Doe judge "shall" charge upon finding probable cause, whereas a judge under sec. 968.02(3) "may permit" the filing of a complaint.

Wisconsin constitutional history leads inexorably to the conclusion that the complaint in this case was issued as a result of a valid, time-honored and constitutional procedure.

Section 968.26, Stats., does not violate the doctrine of separation of powers and is constitutional. The order of the circuit court is therefore affirmed. Moreover, having given further consideration to *Unnamed Petitioners v. Connors* in the context of this case, we overrule the precedent there established.

*By the Court.*—Order affirmed.

CHIEF JUSTICE HEFFERNAN (concurring). As the author of the majority opinion, I agree with it and join it; but I cannot but feel a sense of unease over the validation of secs. 968.02(3) and 968.26, Stats., when viewed from a public policy aspect. I therefore write additionally in concurrence. The criminal law reform undertaken by the Criminal Rules Committee of the Judicial Council had as one of its purposes the elimination of the last vestiges of the pernicious practice of private prosecutions by persons who owe no allegiance to society as a whole. For a general public policy statement, see *State v. Scherr,* 9 Wis. 2d 418, 426, 101 N.W.2d 77 (1960) ("It is against public policy and the impartial administration of criminal law for a court to allow attorneys for private persons to appear as prosecutors.") and *State v. Peterson,* 195 Wis. 351, 356, 218 N.W. 367 (1928) ("Our scheme contemplates that an impartial man selected by the electors of the county shall prosecute all criminal actions in the county unbiased by desires of complaining witnesses or that of the defendant.").

Both of the statutes validated here in make it possible for persons to trigger the prosecutorial powers of the state *in any kind of criminal action* where "probable cause" can be established. No consistent prosecutorial policy in respect to the initiation of charges can be maintained under these circumstances. What will be charged

367

can lie within the whim of any complainant. The *de facto* standard for prosecuting attorneys is, in the experience of this writer, but for the exceptional case, not to invoke the awesome power of the state unless the crime in all likelihood can be proved beyond a reasonable doubt. Our imprimatur upon these statutes may well give a gloss that runs counter to the legislative intent of Wisconsin's criminal law reforms. The writer is not unmindful of the predicament of a victim of a crime who is afforded no relief by a recalcitrant prosecutor. It would appear, however, that this situation might better be alleviated by legislative approval of a limited judicial review of a prosecutor's declination to prosecute. See, *State ex rel. Unnamed Petitioners v. Connors,* 136 Wis. 2d 118, 134, 142, 401 N.W.2d 782 (1987).

While I am uncomfortable with the validation of what may be the unwise policy of secs. 968.02(3) and 968.26, Stats., as the writer of the majority opinion I nevertheless have concluded that the statute at issue in *Connors* has not been shown to be unconstitutional. Because the writer of the majority opinion in this case was also the author of *Connors,* it is of some comfort to know that judicial recantation is not without precedent. Judge Ruggero J. Aldisert, formerly Chief Judge of the Court of Appeals for the Third Circuit, has provided me with the following utterances that have accompanied judicial second thoughts:

Justice Potter Stewart, concurring in *Boys Markets v. Clerks Union,* 398 U.S. 235 (1970), wrote:

> In these circumstances the temptation is strong to embark upon a lengthy personal *apologia.* . . . An aphorism of Mr. Justice Frankfurter provides me refuge: 'Wisdom too often never comes, and so one ought not to reject it merely because it comes late.'

368

And Justice Jackson, concurring in *McGrath v. Kristensen,* 340 U.S. 162, 178 (1950), relied upon an English Judge, Lord Westbury, "who, it is said, rebuffed a barrister's reliance upon an earlier opinion of his Lordship: 'I can only say that I am amazed that a man of my intelligence should have been guilty of giving such an opinion.' "

Perhaps most apropos to the present situation and also quoted by Justice Jackson is the statement of Baron Bramwell in *Andrews v. Styrap,* 26 L.T.R.(N.S.) 704, 706 (1872), "The matter does not appear to me now as it appears to have appeared to me then."

I invoke all of the above utterances on the occasion of the overruling of a decision so recently written by the author of this opinion, an opinion that I believe was in the public interest and in accordance with rational prosecutorial policy, but which has not withstood subsequent scrutiny on a constitutional basis.

DAY, J. (concurring). I write this concurrence to the majority opinion in response to the concurrence written by its author. That concurrence is critical of both John Doe statutes, secs. 968.26 and 968.02(3), Stats., which provide for judicial review where a district attorney refuses to prosecute.

The concurrence refers to the "awesome power of the state" in criminal matters. To the ever increasing army of crime victims, "awesome impotence" of government would appear to be a more accurate description. President Bush has recently requested congress for a multi-billion dollar program to build more federal prisons, increase law enforcement personnel and "win back the streets" of our large cities where armed thugs terrorize the citizenry. We now have Washington, D.C. winning the title of "Murder Capitol of the World."

An article by Richard B. Abell, Assistant United States Attorney General, in charge of the Office of Justice Programs, appearing in the March 21, 1989 issue of the *Wall Street Journal* shows the fact is that the apprehension and imprisonment of criminals for substantial periods of time "works." That is it cuts down the amount of crime and saves society billions of dollars. Building prisons and utilizing them is a good investment. The article points out that a Rand Corporation study shows that in 1983 there were 42.5 million victimizations. In a country of 250 million that is a shocking statistic. "We find a typical offender in the survey is responsible for $430,000 in crime costs. The costs to imprison this offender for one year is $25,000. Thus a year in prison costs $405,000 less than a year of criminal activity. A year of crime is seventeen times more expensive for society than a year in prison." A chart accompanying the Abell article shows a direct correlation between incarceration rates and the crime rate. In 1960 the chance that an offender (in Part I Crimes, i.e., Homicide, forceable rape, robbery, aggravated assault, burglary, larceny, theft, motor vehicle theft) would receive a prison sentence was 6.2 percent per 100 crimes. The number of Part I Crimes was less than 2 percent per 100 population. In 1974 the chances for imprisonment fell to 2.1 percent and the number of crimes rose to 4.8 percent per 100 population.

What all the statistics on monetary crime costs do not reflect is the "misery index," the individual physical and emotional suffering of those crime victims and their families who have been murdered, beaten, robbed and "ripped off" by the criminal element in our midst.

In this period when we see interest in "victim's rights" coming to the fore, certainly having one's tormentor brought to justice should be near the top of any

victim's rights program, second only to the right not to be a victim in the first place.

This is not, as the author of the majority opinion in his concurrence sees it, as somehow a tendency in the direction of "the pernicious practice of private prosecutions" nor does it "allow attorneys for private persons to appear as prosecutors" (Chief Justice Heffernan concurring, p. 367). Neither statute allows private counsel to act as prosecutor. Prosecution can only be done by the elected district attorney or special prosecutors appointed by the courts. Nowhere do our statutes permit private attorneys representing victims to prosecute and try criminal defendants.

The John Doe provisions have been frequently used by district attorneys to ferret out the perpetrators of crime where ordinary investigative procedures fail. I believe it would be a mistake to alter a procedure that has served us well since before statehood. Section 968.02(3), Stats., is a clear expression of legislative intent that victim's have recourse to the courts when a district attorney refuses to act.[1]

---

[1]Section 968.02, Stats., was established in 1969 by chapter 255, Laws of 1969. The accompanying comments to the section stated in part:

> Sub. (3) provides a check upon the district attorney who fails to authorize the issuance of a complaint, when one should have been issued, by providing for a judge to authorize its issuance.

> Sub. (3) also provides a vehicle for the issuance of complaints when the district attorney is unavailable.

> The section is based upon s. 6.01 of the ALI Model Code of Pre-Arraignment Procedure.

Section 6.02(3) of the Model Code (Tent. Draft No. 1, 1966), provided:

> (3) *Filing by Order of a Judicial Officer.* In any case in which a prosecuting attorney refuses to issue a complaint, a judicial officer

Crime victims should have recourse to the judicial branch when the executive branch fails to respond. This seems to me to be in keeping with constitutional rights. The first amendment to the United States Constitution guarantees the right "to petition the government for a redress of grievances." The Wisconsin Constitution also provides in art. I, sec. 4: "The right of the people peaceably to assemble, to consult for the common good and to petition the government, or any department thereof, shall never be abridged." The statutory provisions here under consideration are a legislative codification of the right to petition the judicial branch for a "redress of grievances" when that is appropriate.

I would retain these statutes.

STEINMETZ, J. (Concurring). I disagree with the Chief Justice's statement in his concurring opinion that secs. 968.02(3) and 968.26, Stats., may be against

---

may permit the filing of a complaint if, after hearing the complainant and the prosecuting attorney, he finds there is reasonable cause to believe that the person named in the complaint has committed the offense charged.

This subsection was included to provide a check upon the prosecutor's decisions not to issue complaints. *Id.* Note on Section 6.02. The judge was "given power to permit the filing of a complaint over the objection of the prosecutor . . .." *Id.*

The Criminal Procedure Code Revision Committee reviewed these provisions. Notes from the committee meetings of November 17 and 18 (year unknown), show that the Model Code was modified by the Committee. Section 968.02(3), Stats., was created by adding the words "or is unavailable" to the text and "after a general discussion, it was decided to delete the last part of (3) making it read only: 'In any case in which a district attorney refuses or is unavailable to issue a complaint, a judge may permit the filing of a complaint.' " Drafting Record of Chapter 255, Laws of 1969, Legislative Reference Bureau.

good public policy from a historical perspective. These statutes are a part of the public policy of this state and have withstood the test of time, and as Justice Day describes in his concurring opinion, these statutes promoted victims' rights before that term became popular in political circles.

The fear that, "What will be charged can lie within the whim of any complainant" (Chief Justice Heffernan's concurring opinion at 367) is an unfounded one. Section 968.02(3), Stats., requires the circuit judge to find that "there is probable cause to believe that the person to be charged has committed an offense after conducting a hearing" and the judge "may" then issue a complaint. Section 968.26 only requires the issuance of a complaint "[i]f it appears probable from the testimony given that a crime has been committed and who committed it . . ." The validation of these statutes does not, as the concurrence suggests, revive "the pernicious practice of private prosecutions by persons who owe no allegiance to society as a whole." (Chief Justice Heffernan's concurring opinion at 367.)

The John Doe statute particularly assists the district attorneys as well as victims. The district attorney can ask a judge to conduct a John Doe and thereby (1) force victims to testify under oath; (2) ask for witness immunity to develop the investigation; and (3) have an investigation conducted in secret at the judge's discretion to protect the development of the investigation. These are tools of investigation not within the authority of the district attorney.

I agree entirely with the majority decision.

I am authorized to state that JUSTICE LOUIS J. CECI joins this concurring opinion.