STATE of Wisconsin EX REL. Oscar J. WILLIAMS,
Petitioner,

v.

The Honorable Patrick J. FIEDLER, presiding,
Respondent.

Court of Appeals

*No. 2004AP175–W. Submitted on briefs October 14, 2004.
—Decided April 14, 2005.*

2005 WI App 91

(Also reported in 698 N.W.2d 294.)

 ██

On behalf of the petitioner, the cause was submitted on the brief of *Oscar J. Williams, pro se.*

On behalf of the respondent, the cause was submitted on the briefs of *David C. Rice*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Deininger, P.J., Lundsten and Higginbotham, JJ.

¶ 1. LUNDSTEN, J. This case comes before us on a petition for a supervisory writ of mandamus. Oscar Williams filed a petition with Circuit Judge Patrick Fiedler requesting commencement of a John Doe proceeding. Under WIS. STAT. § 968.26 (2003–04),[1] "[i]f a person complains to a judge that he or she has reason to believe that a crime has been committed" within the judge's jurisdiction, the judge must conduct an evidentiary hearing at which the complaining person testifies and may present other witnesses. In this case, the circuit judge reviewed Williams' petition and also obtained and reviewed police reports containing information casting doubt on assertions in the petition. The circuit judge rejected the petition, explaining that his review of the petition and the police reports led him to conclude that the petitioner "failed to allege facts sufficient to raise a reasonable belief that a punishable, or, for that matter provable, crime has been committed."

¶ 2. As will become clear, the circuit judge in this case applied his common sense and reasonably concluded that conducting a John Doe hearing would be a waste of time. Nonetheless, we grant the writ, and

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

thereby effectively reverse, because the circuit judge reached this reasonable conclusion by assessing credibility and choosing between competing inferences. The John Doe statute, as interpreted in *State ex rel. Reimann v. Circuit Court for Dane County*, 214 Wis. 2d 605, 615, 571 N.W.2d 385 (1997), does not permit this sort of analysis at the threshold stage of determining whether a John Doe petition contains reason to believe that a crime has been committed.

### *Background*

¶ 3. Williams filed a petition for a John Doe proceeding under WIS. STAT. § 968.26. Williams' petition alleged that Joseph Heise attacked and beat him. The petition makes the following allegations:

- On December 18, 2002, after bar closing time at approximately 2:30 a.m., Williams was standing in a line outside a restaurant on State Street in Madison.

- Williams was approached by a panhandler, a man later identified as Joseph Heise.

- Heise asked for some change, and Williams told Heise to "go get a job."

- Williams, a black male, heard "a lot of heckling in the background from numerous college students, saying 'are you going to let that nigger talk to you like that?' "

- Williams was the only black person "in sight."

- Williams decided to leave and walked to a different restaurant, LaBamba's, "around the corner from where I had originally been."

- As Williams neared LaBamba's, he "heard running footsteps" behind him.

- Williams attempted to turn, and he was "met with a flying kick in the lower back" inflicted by Heise, a kick that caused Williams to fall to the ground.

- Heise told Williams that Heise would "kick [Williams'] black ass."

- "[T]wo other younger Caucasian men who appeared to be college students joined Heise, and Heise started to punch [Williams] in the face over and over again."

- All three men "took turns punching and hitting [Williams] in the head" while saying " 'nigger . . . I'll kill your black ass . . . don't ever talk back to a white man . . .' and other profanities."

- Williams was "in and out of consciousness, and last heard them say 'let's get out of here.' "

- Williams "stumbled" to his feet and noticed he "couldn't see, and that [his] eyes were beginning to feel heavy indicating that they were swollen shut."

- Williams walked to a food store, where an employee called "Fire Rescue," and he was transported to UW Hospital.

Williams' petition also asserts that the incident was investigated by the Madison Police Department "under incident report no. 2002–152973" and that the district attorney refused to pursue the matter.

¶ 4. After receiving Williams' petition, the circuit judge asked the district attorney to supply copies of police reports and also asked whether he considered filing charges. The district attorney responded with a letter and copies of several police reports. The district attorney stated in his letter to the judge that the case had apparently not been referred to his office but, having reviewed the materials, he did not believe there was a basis for proceeding with criminal charges against Heise.

¶ 5. The police reports sent to the circuit judge stated that officers located and interviewed both Williams and Heise shortly after the altercation that led to Williams' injuries. The reports state that at about 2:46 a.m. on the night Williams was taken to the hospital, a man named Joseph Heise approached a police officer near State Street. Heise gave an account to the police that, with notable exceptions, roughly tracked the account Williams provided to the circuit judge in his John Doe petition.

¶ 6. According to Heise, it was Williams who followed Heise to LaBamba's. Heise told police that Williams threatened Heise with a knife and that Heise defended himself by punching Williams in the face until Williams gave up his knife. Heise said he kicked the knife away and then put it under a nearby dumpster so his attacker would not have access to it. After giving this account to police, an officer took Heise to where Heise said the altercation occurred and Heise showed the officer the knife under the dumpster. The officer observed two small pools of blood, retrieved the knife, and observed the knife had blood on it. A subsequent test of the knife produced no fingerprint evidence.

¶ 7. The police reports indicate that during the time Heise was being questioned near State Street, an officer attempted to question Williams at the UW Hospital Emergency Room. The officer who interviewed Williams reported that Williams' face was bloody and swollen. Williams was treated for a broken nose and required stitches over one eye. The officer smelled a strong odor of intoxicants emanating from Williams. He observed that Williams was uncooperative with medical personnel, that Williams was angry and agitated, and that Williams alternated between

being uncooperative and somewhat cooperative. Williams told the officer that he had been "jumped by some white boys" and gave a physical description of one of them. Williams said all three took turns striking him.

¶ 8. Williams was asked whether a weapon was involved. He said: "Yeah. No knife." He described the weapon as a "billy-jack," but would not further describe the weapon. The officer wrote that a "billy-jack" is an item filled with lead. The officer also wrote that, although Williams initially said that his assailants said nothing during the attack, when he was later asked if they said anything during the attack, Williams responded, "Nigger 'shit.' "

¶ 9. The police reports show that neither Williams nor Heise was arrested at the time, but an officer was assigned to do a follow-up investigation. This officer's efforts failed to locate either man. However, about two weeks later, on January 2, 2003, Williams was in court for an "unrelated" preliminary hearing. At that time, an officer asked Williams if he wanted to make a statement about the incident involving Joseph Heise. Williams told the officer he did not wish to make any statement.[2]

¶ 10. About three weeks later, on January 23, 2003, an officer was dispatched to the county jail where Williams was incarcerated. Williams wanted to report an alleged battery committed by Heise against Williams about a week before Christmas. Williams said he waited to complain because he first learned Heise's full name when Williams was arraigned on charges stemming

---

[2] In his petition for a writ of mandamus filed in this court, Williams denies that the police officer who questioned him on January 2, 2003, told him Joseph Heise's name.

from an altercation he had with Heise on January 9, 2003.[3]

¶ 11. After reviewing Williams' petition, the district attorney's letter, and the police reports, the circuit judge denied Williams' petition. The judge wrote:

> The court notes from its review of the City of Madison incident report that the Madison Police Department did conduct an investigation of the allegations and that the petitioner was not cooperative. According to the incident report, there are no independent witnesses to corroborate the allegations made by the petitioner. The alleged assailant has cooperated with the police and indicated that the petitioner came at him with a knife and that the alleged assailant was acting in self-defense. Based upon my review of the incident reports, I am satisfied that a John Doe proceeding is not necessary, as it would simply be an effort to duplicate what the City of Madison Police Department has already done. I am further satisfied that a review of these materials and of the petition leads me to conclude that the petitioner has failed to allege facts sufficient to raise a reasonable belief that a punishable, or, for that matter provable, crime has been committed. Thus, in the exercise of my discretion, I'm DENYING the petition without an examination.

After receiving this decision, Williams filed a petition for a writ of mandamus asking this court to order that a John Doe hearing be held.

---

[3] In his petition for a writ, Williams asserts that he stabbed Heise on January 9, 2003, in self-defense after Heise appeared out of nowhere and attacked Williams. Reports attached to Williams' writ indicate that Williams, who was born in 1949, has spent about 35 years of his life in prison and has psychological problems. It appears that Williams was convicted and sentenced to prison as a result of stabbing Heise.

### Discussion

¶ 12. Williams filed a petition under the John Doe statute with the circuit judge, requesting that the judge take Williams' testimony under oath. The John Doe statute, Wɪs. Sᴛᴀᴛ. § 968.26, provides, in pertinent part:

> If a person complains to a judge that he or she has reason to believe that a crime has been committed within his or her jurisdiction, the judge shall examine the complainant under oath and any witnesses produced by him or her . . . .

The supreme court has interpreted this language to mean that "once a John Doe complainant has shown that he or she has reason to believe that a crime has been committed, the judge has no discretion to refuse to examine the complainant." *State ex rel. Reimann v. Circuit Court for Dane County*, 214 Wis. 2d 605, 615, 571 N.W.2d 385 (1997).

¶ 13. When determining whether a John Doe petitioner has alleged "reason to believe," circuit judges must apply an objective standard. A petitioner must "allege facts sufficient to raise a reasonable belief that a punishable crime has been committed." *Id.* at 618. Conclusory allegations are insufficient. *Id.* "[I]f a John Doe complainant, in his or her petition, presents only conclusory allegations, or fails to allege facts sufficient to raise a reasonable belief that a punishable crime has been committed, the circuit court judge may, in the exercise of his or her legal discretion, deny the petition without an examination." *Id.*

¶ 14. Williams' petition, viewed by itself, presents "reason to believe" that a crime was committed in the circuit judge's jurisdiction. Specifically, the petition pre-

sents Williams' firsthand account of the battery Heise allegedly perpetrated in Dane County in December of 2002. In Williams' telling of the incident, he did nothing to provoke the panhandling Heise, except to tell Heise to get a job. According to Williams, Heise followed Williams as Williams left the area of the initial verbal confrontation, and Heise brutally attacked Williams with the assistance of two young men.

¶ 15. The circuit judge did not rule that Williams' petition, viewed in isolation, failed to allege facts constituting "reason to believe" that a crime had been committed. Instead, the judge's decision concludes that Williams' petition, considered in light of information in the police reports and the district attorney's letter, does not, in the words of the judge's written decision, "allege facts sufficient to raise a reasonable belief that a punishable, or, for that matter provable, crime has been committed."

*Reason to Believe*

¶ 16. We first address the circuit judge's argument that a "provable" crime was not alleged. The judge argues, in effect, that he was entitled to consider the chances of a successful prosecution when deciding whether the petition met the "reason to believe" standard.[4]

¶ 17. The judge contends he reasonably interpreted the John Doe statute as requiring Williams to make a showing that a "provable" crime was committed. The judge explained in his written decision that there were no witnesses to corroborate Williams' allegations.

---

[4] Although we refer to arguments as being made by the circuit judge, we note that the judge is represented on appeal by the Attorney General.

He also noted that Heise cooperated with the police and told police that he acted in self-defense when Williams came at him with a knife. Finally, the judge expressed his belief that a John Doe proceeding would "simply be an effort to duplicate what the City of Madison Police Department has already done." To this list we could add that the reports say that Heise voluntarily approached the police about the incident and that Williams was intoxicated, uncooperative, and inconsistent.

¶ 18. We understand the circuit judge's use of the word "provable" to mean that the information in the police reports persuaded him that there was essentially no chance a judge or jury would find, beyond a reasonable doubt, that Heise committed a crime. The circuit judge argues that he "reasonably afforded some deference to the charging decision of the district attorney" and that he reasonably decided, based on all the information before him, that there was "insufficient objective evidence of a provable crime." Under these circumstances, according to the judge, the "reason to believe" standard is not met because there is no showing that a "provable" crime had been committed.

¶ 19. We agree that it was reasonable for the circuit judge to predict that Williams would not succeed in persuading a fact finder that Heise is guilty beyond a reasonable doubt. But we think the John Doe statute precludes this sort of assessment by the judge at the petition stage. Indeed, the circuit judge's appellate brief aptly sums up the issue:

> At its core, this case requires [the court of appeals] to decide if Judge Fiedler properly determined that Williams failed to satisfy the objective, threshold requirement for commencing a John Doe proceeding, or whether Judge Fiedler improperly weighed Williams' credibility or chose between conflicting facts and inferences.

¶ 20. In *Reimann*, the supreme court explained that when judges assess "reason to believe," they "should not weigh the credibility of the complainant or choose between conflicting facts and inferences." *Id.* at 625. Furthermore, *Reimann* teaches that the "reason to believe" standard is somewhat lower than probable cause. According to *Reimann*, the " 'John Doe complaint ... need not name a particular accused; nor need it set forth facts sufficient to show that a crime has probably been committed. The John Doe is, at its inception, not so much a procedure for the determination of probable cause as it is an inquest for the discovery of crime ....' " *Id.* at 624 (quoting *State v. Washington*, 83 Wis. 2d 808, 822, 266 N.W.2d 597 (1978)).

¶ 21. The story Williams tells in his petition is a plausible account of a battery. The judge's negative assessment of Williams' story is based on information in the police reports strongly indicating that Heise's assertion of self-defense is more credible. In the words of the circuit judge's brief, this is a "classic 'he said-he said' " case, with the police reports indicating that the evidence would show Heise was more worthy of belief than Williams. Thus, we can only conclude that the judge's rejection of Williams' petition was a result of weighing Williams' credibility and choosing between conflicting facts and inferences, something prohibited by *Reimann*.

¶ 22. We readily acknowledge that the John Doe statute, as construed in *Reimann*, is subject to abuse. This case is a good example. Our review of the police reports leads us, like the circuit judge, to believe that it is a virtual certainty that examining Williams under oath will be a waste of judicial resources and, in this case, prison and law enforcement resources, since it appears Williams is currently serving a prison term. But our belief is based on the same type of credibility assessment

the circuit judge must have engaged in. The John Doe statute, as interpreted in *Reimann*, does not permit this assessment at this threshold stage in the process. And, the circuit judge does not suggest a viable construction of the John Doe statute that would preserve its readily apparent purpose but limit the sort of abuse likely going on here.

*Consideration of the Police Reports*

¶ 23. As is apparent from the discussion above, if we assume the circuit judge properly considered the police reports, we nonetheless conclude the circuit judge erred when he denied Williams' petition without examining Williams under oath. Nonetheless, we briefly address the circuit judge's consideration of those police reports.

¶ 24. In an order requesting appellate briefing, we indicated that the circuit judge was free to make all arguments he believed supported his decision. But we specifically asked that the following question be addressed: Did the circuit judge properly consider "material extrinsic to the petition" in determining whether Williams' petition presented "reason to believe" within the meaning of the John Doe statute? Responding to our request, the circuit judge argues that his consideration of the police reports was proper for two reasons. We do not find either persuasive.[5]

¶ 25. We understand the circuit judge's first argument to be this: Although the police reports were not

_____

[5] As indicated earlier, the circuit judge is represented on appeal by the Attorney General. Although in the text we say that our request for briefing was directed at the circuit judge, in fact it was directed at the Attorney General. All of the argu-

attached to the petition, and even if the reports were not incorporated into the petition by reference, the judge's *sua sponte* acts of requesting the police reports and considering them is supported by the following language from *Reimann*:

> Where a mere technical error on the face of the petition, or an inadequacy in the facts alleged therein, can be cured by a simple request for additional information, justice may be best served under Wis. Stat. § 968.26 by the judge simply making such request or examining the complainant.

*Reimann*, 214 Wis. 2d at 625. The judge argues that this part of *Reimann* interprets the John Doe statute as generally authorizing the consideration of information outside the petition. We disagree. In this part of *Reimann*, the supreme court is not talking about judges going outside a citizen's "complaint" looking for substantiating or conflicting information. Rather, the court is explaining that judges have the discretion to request additional information in an effort to *assist* complainants. The larger context for the above quote is as follows:

> If . . . the judge finds that the complainant has failed to establish "reason to believe," that judge may deny the John Doe petition without conducting an examination.
>
> This, of course, is not to say that the judge's decision may rest upon prejudice or caprice. In determining whether the petition is worthy of further treatment, a circuit court judge must act as a neutral and detached magistrate. In making this decision, the judge should not weigh the credibility of the complainant or choose between conflicting facts and inferences. For

ments we attribute to the circuit judge in this case were made on his behalf by the Attorney General.

some complainants, the John Doe procedures available under Wis. Stat. § 968.26 provide their only entrance to the state courts. Although we believe that circuit court judges must perform some gate-keeping functions under Wis. Stat. § 968.26, we do not here intend to close the doors of the courtroom to those persons who may have reason to believe a crime has been committed. In addition, the judge must recognize that many John Doe petitions are filed *pro se* by complainants not trained in the complexities of criminal law and procedure. Where a mere technical error on the face of the petition, or an inadequacy in the facts alleged therein, can be cured by a simple request for additional information, justice may be best served under Wis. Stat. § 968.26 by the judge simply making such request or examining the complainant.

*Id.* at 625 (citation omitted). Thus, this part of *Reimann* simply says that judges have the discretion to request additional information to assist a *pro se* complainant.

¶ 26. To sum up, we address no more than the narrow argument before us, namely, that the quoted *Reimann* language supports the circuit judge's request for, review of, and use of the police reports to reject Williams' petition. *Reimann* does not support this argument.

¶ 27. The circuit judge separately argues that he was entitled to consider the police reports because Williams' petition refers to the police reports. The petition states: "The Madison Police Department filed this case under incident report no. 2002–152973." The judge argues that case law holds that a judge "may consider information attached to or referenced in the petition."

¶ 28. Because the police reports in this case were not "attached" to the petition, the part of the judge's argument that matters is his claim that courts may consider documents *referenced* in a petition. But the

only case the judge offers in support, *Friends of Kenwood v. Green,* 2000 WI App 217, 239 Wis. 2d 78, 619 N.W.2d 271, speaks of "attached" documents. *Id.,* ¶ 11 ("When a document is attached to the complaint and made a part thereof, it must be considered a part of the pleading, and may be resorted to in determining the sufficiency of the pleadings."). Because the circuit judge does not offer support for the conclusion that the police reports in this case were "attached" to Williams' petition within the meaning of *Friends of Kenwood* or any similar authority, we address this argument no further.

### Conclusion

¶ 29. Because Williams' petition under the John Doe statute contains "reason to believe" a crime has been committed, we grant his petition for a writ of mandamus and direct the circuit court judge to "examine the complainant under oath and any witnesses produced by him." WIS. STAT. § 968.26.[6]

*By the Court.*—Writ granted.

---

[6] We do not have occasion to consider what procedures constitute compliance with this statutory directive. Similarly, whether further proceedings are required after the circuit judge complies with the statute is not a question before us. Still, we note that a statement by the supreme court in *State v. Unnamed Defendant,* 150 Wis. 2d 352, 441 N.W.2d 696 (1989), is no longer accurate. In *Unnamed Defendant,* the supreme court said "the John Doe judge 'shall' charge upon finding probable cause." *Id.* at 366. But the "shall" referred to in *Unnamed Defendant* was subsequently changed by the legislature to "may." *See* 1991 Wis. Act 88.